*W. R. Harrison,* for appellant.

*C. F. McNutt* and *A. Ennis,* for appellee.

---

Duckwall and Others *v.* The City of New Albany.

Municipal Law.—Ferries.—The power "to regulate ferries," conferred upon the common council of a city by sec. 33 of the act for the incorporation of cities, &c., (1 G. & H., 223,) does not include the authority to *prohibit,* without a license first obtained therefor from the city. In all instances in the act where it was intended that for the purpose of restraint a license might be imposed, the power is expressly declared, and is not, therefore, to be implied from other provisions.

Vehicles—Specific Tax on.—A ferry boat is not a "vehicle" within the meaning of sec. 42 of the act for the incorporation of cities.

APPEAL from the *Floyd* Circuit Court.

Ray, J.—The city of *New Albany* being incorporated under the general act for the incorporation of cities, enacted an ordinance, declaring "that it shall be unlawful for any person or persons to have, keep or maintain any public ferry across the *Ohio* river, to or from any point within the corporate limits of the city of *New Albany,* without a license first had and obtained therefor from the common council of the city

of *New Albany.*" The penalty for maintaining a ferry without such license is $50. The price of the license is $300 per annum.

The appellants were the owners of a public ferry from *New Albany* across the *Ohio* river, and were prosecuted and judgment recovered before the mayor of said city for maintaining a public ferry without a city license. On appeal to the Circuit Court, a demurrer to the complaint was overruled. The appellant then answered: 1st. A general denial. 2d. That the appellants had for over thirty years owned the ferry landing in fee, and had used and enjoyed the right of ferrying without interference by the city, and were operating their ferry under a State license. 3d. A license from the county board. 4th. A ferry right by prescription. 5th. That the fee charged for license was unreasonable, and was in fact a tax for revenue purposes. Demurrers were sustained to all these defenses, and judgment rendered against the appellants.

The first question presented for the consideration of this court is: Has the city, under the general act for the incorporation of cities, (1 G. &. H., 223,) the authority to pass an ordinance making it unlawful to maintain a public ferry to or from any point within the city limits, without first having obtained a license from the city council?

The validity of the city ordinance depends upon the power conferred upon the city by the 33d section of the act to provide for the incorporation of cities, &c. 1 G. & H. 223. That section declares that the common council of a city shall have power to regulate ferries across streams passing through or bordering upon the corporate limits of such city, designate the kind of boats to be used, the time and place of landing, and the rates of ferriage. The meaning of the word "regulate," as ordinarily used, is "to subject to rules or restrictions." *Webster's* Dic. Or, as *Worcester* defines it, "to adjust by rules or method, to direct, to put in good order, to dispose, to rule, to govern." The meaning

proper to be given to the word in the section cited, may be determined somewhat by its use in other sections. From, that use, we may determine whether the power to regulate includes the power to prohibit unless authorized by a license from the city authorities.

By section 35, the common council have power to regulate or prohibit the use of hand organs, or instruments of an annoying character, in the streets. To prevent or regulate the use of fire arms. To direct the location of markets, and to regulate the same. To regulate the use of coaches, &c., to or from points within the city, for hire or pay. To regulate all inns, taverns, or other places used or kept for public entertainment; also, all shops or other places kept for the sale of articles to be used in and upon the premises. To regulate the time and place of bathing in the rivers or other public waters of said cities. To regulate the ringing of bells and crying of goods, and to restrain hawking and peddling. To establish and regulate public pounds. To regulate the management of all public property, markets and market spaces, and sales of meat, fish and vegetables; to prevent, by ordinance, the offense of regrating and forestalling. To regulate and protect fire engines, &c. To regulate the selling, weighing and measuring of hay, wood, coal and other articles. To establish and construct wharves, docks, piers and basins, and to regulate landing places and fix the rates of landing, wharfage and dockage. To regulate or prohibit runners at wharves, steamboat landings and railroad depots. To regulate the speed of horses, carriages, &c. It thus appears that the words "to regulate," are used in the city charter not as the synonym, but rather as the correlative of the words "to prohibit," "to prevent," "to restrain," "to establish," "to construct," or "to direct the location of."

But the limitation to the meaning of the words, which must prove decisive of the question before us, is found in the provisions of the same section of the charter. The

common council is clothed with authority "to regulate and restrain all tables, alleys, machines, devices, or places of any kind for sports or games, kept for hire or pay; or to prohibit the use of the same as aforesaid, if deemed expedient, without a license being first obtained therefor." "To regulate and restrain all theatrical and other exhibitions and public shows for which money is demanded or received, and, if deemed expedient, to prohibit the same without a license being first obtained therefor." "To regulate the sales of all kinds of property at auction in the streets, stores, shops, or elsewhere in the city, and to license auctioneers and to require them to pay a specific license, or to pay a reasonable per cent. on the amount of the sales." It is very plain from these provisions that the power to regulate does not include the authority to prohibit without a license first obtained therefor from the city council, but that in all instances in which it was intended, for the purpose of restraint, that a license should be imposed, the power is expressly declared, and therefore is not to be inferred from other provisions.

For purposes of revenue, the common council are empowered by the 42d section of the same act to levy and cause to be assessed and collected, in each year, a specific tax on omnibuses or any carriages and other vehicles used and run for passengers for hire. *Webster* states that the word vehicle is rarely applied to water craft, and our statute requires us to give the word as used in the act its "ordinary and usual sense." A former section refers also to the same objects, describing them as "vehicles for the transportation of passengers, freight or other articles, to or from points within the city for hire or pay." We should not, therefore, be justified in holding that the ordinance in question could be sustained even as a specific tax, nor would the objection be removed that the city has no authority to compel the payment of a tax by either penalty or prohibition.

Duckwall and Others *v.* The City of New Albany.

We do not decide that a city may not require a reasonable sum from any particular employment, to compensate for any additional expense incurred in the exercise of the power to regulate. No such question is presented here. In the case before us, the sum demanded clearly declares the purpose.

The correctness of the construction we have placed upon the language used on this subject in the city charter, is only confirmed by the fact that when the act for the incorporation of cities was passed, there already existed an act, passed on the preceding day, conferring upon the board of county commissioners of each county the power "to establish and regulate ferries," and that in the act as then passed for the incorporation of cities, no power was given to the common council over ferries, but the entire authority to establish and regulate them was given to the commissioners. At a later date, the legislature, perhaps concluding that the representatives of a city best knew the wants of the citizens, conferred upon them also the power to regulate the ferries upon streams passing through or bordering upon the corporate limits of the city. But we must regard this legislation as made in view of the existing law, and because the legislature, after having denied all power to the city council on that subject, have at a later date in part reconsidered their refusal, and authorized the city to regulate, we cannot go beyond their language, and declare their intent to confer the power to establish.

Where the legislature has passed two laws upon the same subject, in the one conferring upon a corporate body the power to establish and regulate, and in the other act have authorized another corporation, within a limited territorial space, to exercise an authority to regulate the same subject matter, we would do violence to the language used in holding that the authority conferred, even within the limited territory, was identical. The demurrer should have been sustained to the complaint.

The judgment is reversed, with costs, and the cause remanded for further proceedings in accordance with this opinion.

*T. M. Smith* and *M. C. Kerr*, for appellants.

*J. H. Stotsenburg*, *T. M. Brown* and *A. Dowling*, for appellee.