[No. 25077.   *En Banc.*   May 2, 1934.]

CHARLES G. AJAX, *Appellant,* v. LUTHER E. GREGORY
*et al., Respondents.*[1]

[1]Reported in 32 P. (2d) 560.

466

*Ryan, Askren & Ryan, Nuzum & Nuzum, H. E. T. Herman, George Donworth, Charles T. Donworth,* and *Richard Munter,* for appellant.

*The Attorney General, John W. Hanna, George Downer,* and *George G. Hannan, Assistants,* for respondents.

*Grinstead, Laube, Laughlin & Meakim, E. W. Anderson, Robert E. Evans, Alfred J. Schweppe, Timothy A. Paul,* and *Henry T. Ivers, amici curiae.*

MAIN, J.—The plaintiff, a registered pharmacist and the operator of a drug store in this state, brought this action as a citizen and taxpayer for the purpose of securing an injunction against the defendants prohibiting them from carrying out the provisions of chapter 62, Laws of 1933, Ex. Ses., p. 173 (Rem. 1934 Sup., § 7306-1 *et seq.*), for the alleged reason that the act was unconstitutional. To the complaint, a demurrer was interposed and sustained. The plaintiff elected to stand upon his complaint and refused to plead further.

Judgment was entered dismissing the action, from which he appeals.

The act now before us recites, as its title indicates, that it is one relating to intoxicating liquors and providing for the control and regulation thereof.

Section 1 of the act says it may be referred to as the "Washington state liquor act."

Section 3 contains a number of definitions.

Section 4, subdivision 1, provides that there shall be established at such places throughout the state as the liquor control board provided for in the act shall deem advisable, stores, which stores shall be known as "state liquor stores," for the sale of liquor in accordance with the provisions of the act and the regulations therein provided for.

Section 5 of this section says that the administration of the act, including the general control, management and supervision of all state liquor stores, shall be vested in the state liquor control board.

Subdivision 1 of § 7 provides that an employee in a state liquor store may sell to any person who is the holder of a subsisting permit such liquor as that person is entitled to purchase under his permit.

Section 12 provides that, upon application in the prescribed form being made to any employee authorized by the board to issue such permits, accompanied by payment of the prescribed fee, and upon the employee being satisfied that the applicant should be granted such permit for the purchase of liquor under this act, the employee shall issue to the applicant a permit of the class applied for.

Subdivision (e) of this section provides for a special permit to a person operating a drug store for liquor to be sold upon the prescription of a physician.

Section 17 provides that, where the holder of any permit issued under the act violates any of the provi-

sions thereof or of the regulations, or is an interdicted person, or is otherwise disqualified from holding a permit, the board, upon proof to its satisfaction of the fact or existence of such violation, interdiction, or disqualification, may, in its discretion, with or without any hearing, suspend the permit and all rights of the holder thereunder for such period as the board sees fit, or may cancel the permit.

Section 23 provides for the different classes of annual license fees and fixes the amount thereof: License to manufacturers of liquor, including all kinds of manufacturers except distillers, and wineries and farmers' wineries, the fee is $250; license to wineries, $25; license to distillers, $2500.

Subdivision 1 of § 51 provides that, where a medicinal preparation contains liquor as one of the necessary ingredients thereof, and also contains sufficient medication to prevent its use as an alcoholic beverage, nothing in the act shall apply to or prevent its composition or sale by a druggist when compounded from liquor purchased by the druggist under a special permit held by him.

Section 62 provides that the order or decision of the board as to any permit or license shall be final and shall not be reviewed or restrained by injunction, prohibition or other process or proceeding in any court.

Section 63 provides that there shall be a board known as the "Washington state liquor control board," consisting of three members.

Section 73 provides that, for the purpose of carrying out the provisions of the act, there is created a fund, to be known as the "liquor revolving fund," which shall consist of all license fees, permit fees, penalties, forfeitures and all other moneys, income or revenue received under the act.

Section 74 provides that all expenses whatsoever

arising under the administration of the act shall be paid "from said liquor revolving fund."

Section 76 provides that for the purpose of providing the necessary moneys to carry the act into effect, the board is authorized to issue and sell bonds, payable only out of the liquor revolving fund, in the amount of $1,500,000; and it is further provided in the section that each bond and interest coupon attached shall show on its face that it is payable solely from the liquor revolving fund and not otherwise, and that neither the state of Washington nor the board nor any member thereof shall incur any liability or obligation by reason of the authority granted in this section. There is also a provision for the creation of a cash reserve of $500,-000.

Section 77 provides the manner in which the moneys in the liquor revolving fund, in excess of the amount specified in the previous section, or § 76, shall from time to time be disposed of.

The right of the state, in the exercise of its police power, to either prohibit entirely the sale of intoxicating liquors or regulate the sale thereof is thoroughly established. The manner and extent of the regulation, if there be regulation, rests in the legislative judgment of the state, and is a matter of legislative policy. *Crowley v. Christensen,* 137 U. S. 86, 11 Sup. Ct. 13; *Tacoma v. Keisel,* 68 Wash. 685, 124 Pac. 137, 40 L. R. A. 757.

The power of the state over the matter of intoxicating liquors goes to the extent that the state has a right to establish a dispensary system under its exclusive control to be operated by a state agency. To state it otherwise, the state has the right and the power to provide for the sale of intoxicating liquors solely through state stores. *State ex rel. George v. Aiken,* 42 S. C. 222, 20 S. E. 221, 26 L. R. A. 345; *Vance v.*

*Vandercook Co.,* 170 U. S. 438, 18 Sup. Ct. 674; *South Carolina v. United States,* 199 U. S. 437, 26 S. Ct. 110. In support of each of the propositions stated, many other authorities might be cited, but those rules are so well established as not to call for the multiplication of citations in their support.

█ It is said, however, that the state may not deny a licensed pharmacist and the operator of a drug store, such as the appellant, the right to fill a prescription issued by a physician which calls for liquor or alcohol as one of its ingredients, and that that provision of the act which provides that the act of the liquor control board with reference to the refusing of a permit or the revocation thereof shall be final and not subject to a review by the court, is invalid, because it places in the board the right to exercise arbitrary power. Before the appellant can raise this question, he must show a threatened wrong to himself or an invasion of some legal right, and some interest in preventing a wrong sought to be perpetrated. Before a law can be attacked by any citizen on the ground of unconstitutionality, he must show that its enforcement is an infringement on his rights of person or property. Cooley's Constitutional Limitations, 8th ed., p. 340; *Plumb v. Christie,* 103 Ga. 686, 30 S. E. 759, 42 L. R. A. 181; *Birmingham v. Cheetham,* 19 Wash. 657, 54 Pac. 37.

There is no allegation in the complaint in this case that the appellant was denied a permit, or that, one having been granted, it had either been revoked or that its revocation was threatened. Until one of these situations arises, if it does, the appellant is in no position to call upon a court, in the exercise of its equity powers, to grant an injunction.

█ If the provision with reference to making the action of the liquor control board final, when the question properly arises, should be held invalid, it could

not possibly affect any other provision of the act. *In re Thompson,* 36 Wash. 377, 78 Pac. 899. Neither is the question of whether there is a right to have a court review of the act of the board, notwithstanding the provision thereof making the ruling of the board final, now before us.

In subdivision (c) of the seventh amendment to the constitution of this state, it is provided that:

"No act, law, or bill approved by a majority of the electors voting thereon shall be amended or repealed by the legislature within a period of two years following such enactment."

At the general election held November 8, 1932, there was passed by the vote of the people (Laws of 1933, chapter 2, p. 23, Rem. 1933 Sup., § 7328-1) an act relating to intoxicating liquors. Section 1 thereof provided that every person who shall sell any intoxicating liquor to any minor shall be guilty of a felony. Section 2 repeals a large number of statutes therein recited, and provides that the repeals provided for shall not be construed or held to revive or make effective any law or laws providing for the licensing or operation of saloons.

In 1917 (Laws of 1917, chapter 19, p. 46), there was passed what is generally known as the "bone dry" amendment to chapter 2 of the Laws of 1915, p. 2, which provided for state prohibition. Prior to the prohibition law, there had been from time to time many laws passed for the regulation of the sale of intoxicating liquor. Under the "bone dry" law, as indicated, that sale was prohibited. The question then arises whether, when the people voted to repeal the dry law, the legislature was without power to regulate the sale of intoxicating liquor for a period of two years, the repealing law having been voted by the people.

While a prohibition of the sale of intoxicating liquor

and the regulation of the sale thereof relate to the same subject matter, they are entirely different things. To prohibit the liquor traffic, implies the putting a stop to its sale as a beverage, to end it fully, completely and indefinitely. To regulate, implies that the sale of intoxicating liquor shall go on within the bounds of certain prescribed rules, restrictions and limitations.

In *McPherson v. State*, 174 Ind. 60, 90 N. E. 610, 31 L. R. A. (N. S.) 188, it is said:

"To regulate, restrict, and control the sale implies that the sale shall go on within the bounds of certain prescribed rules, restrictions, and limitations. *Sweet v. City of Wabash* (1872), 41 Ind. 7; *Duckwall v. City of New Albany* (1865), 25 Ind. 283; *Loeb v. City of Attica* (1882), 82 Ind. 175, 42 Am. Rep. 494. Prohibition, as applied to the liquor traffic, implies putting a stop to its sale as a beverage; to end it fully, completely and indefinitely."

The cases of *Miller v. Jones,* 80 Ala. 89; *People v. Gadway,* 61 Mich. 285, 28 N. W. 101, 1 Am. St. 578, and *Stebbins v. Mayer,* 38 Kan. 573, 16 Pac. 745, are to the same effect.

The constitutional provision above quoted does not say that, within a period of two years after an act has been voted by the people, there shall be no legislation upon the same subject matter. It only says that no act, law or bill approved by a majority of the electors voting thereon shall be amended or repealed by the legislature within a period of two years. There is nothing in the state liquor act of this state now under consideration which provides for the regulation and sale of intoxicating liquor which in any way amends or repeals initiative measure No. 61, which simply abrogated the "bone dry" law. In the initiative measure, there will be found no affirmative provision or declaration which could be construed as saying that the regulation of intoxicating liquors for a period of two years

should be prohibited. It is clear to us that, when initiative measure No. 61 was passed by a vote of the people, they did not say, and they did not intend to say, that, for a period of two years, we want liquor sold by any person at any time, at any place, to anyone, except minors, without qualification, regulation or restraint.

The cases of *Italia America Shipping Corp. v. Nelson,* 323 Ill. 427, 154 N. E. 198, and *McQueen v. Randall,* 353 Ill. 231, 187 N. E. 286, while not closely analogous upon the situation presented, support the principle that a constitutional provision which merely provides that no act, law or bill approved by a majority of the electors voting thereon shall be amended or repealed by the legislature within a period of two years, does not prohibit legislation upon the same subject matter so long as it does not amend or repeal the act, law or bill approved by the electors. The state liquor control act now before us in no way conflicts with the constitution.

▇ From the recital of certain provisions of the act, it appears that all moneys from the license fees, permits and operation of the state stores shall be paid into a revolving fund. Section 6 of Article VII of the constitution provides that:

"All taxes levied and collected for state purposes shall be paid in money only into the state treasury."

The license fees provided for in the act do not come within that provision of the constitution, and the legislature had a right to establish the revolving fund.

In *State v. Sheppard,* 79 Wash. 328, 140 Pac. 332, it is said:

"The only taxes mentioned in article 7, or elsewhere in the constitution are property taxes, and from the reading of that article as a whole, we are of the opinion that the limitation here sought to be invoked is no more applicable to this tax than the equality rule is applic-

able to the inheritance tax. This tax, like the inheritance tax, finds no mention in the constitution, and like the inheritance tax, is exacted by virtue of the inherent power of the legislature, unrestrained, we think, by any constitutional rule of the exercise of that power.''

In *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91, chapter 191, Laws of 1933, p. 869 (Rem. 1933 Sup., § 8326-1 *et seq.*), which imposed a tax on engaging in business in this state, was sustained, and it was there held that such a tax did not come within that provision of the fourteenth amendment to the constitution which provides that all taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax. It was there said:

''After an exhaustive study of the cases, we are well satisfied that this is not a property tax, even under the broad and all inclusive terms of our constitution. To hold otherwise would render it exceedingly difficult if not impossible to sustain any excise tax.''

Article VIII of the constitution of this state places a limitation upon state indebtedness, but the provisions of this act in no way conflict with such limitations. As already pointed out, the act expressly provides that all expenses arising under the administration thereof shall be paid from the liquor revolving fund, and that each bond and the interest coupon attached shall show on its face

''. . . that it is payable solely from the liquor revolving fund and not otherwise, and that neither the state of Washington nor the board nor any member thereof shall incur any liability or obligation by reason of the authority granted in this section.''

Under those provisions, there is not created any state indebtedness within the contemplation of the constitution.

In *State ex rel. Capitol Commission v. Clausen*, 134 Wash. 196, 235 Pac. 364, it is said:

"The legislative act under discussion expressly provides that the principal and interest of the bonds authorized shall be payable only from revenues hereafter received from the lease and sale of the granted lands. In no possible way is the credit of the state involved. Not one dollar of its general property can be used to discharge those bonds or the interest on them. Not one dollar of taxes can be put to that purpose. The state is only carrying into effect the trust imposed on it, which is to use these granted lands or moneys derived from them to construct capitol buildings. Its only obligation under this act is to see that all the revenues hereafter received from the lease or sale of the granted lands shall be applied towards the payment of these bonds and their interest. On no principle of law can it be said that, under these circumstances, any debt has been contracted 'by or on behalf of this state'."

We see no substantial distinction between that case and the one now before us.

There are a number of other questions discussed in the briefs, some of which are covered by what has already been herein said. Others are not now before us. Notwithstanding this, we have been invited to decide all the questions that are presented; but this we cannot do. It has long been the settled policy of this court, in disposing of cases presented, to only decide the questions which are necessary to the decision of the particular case.

In *State v. Bowen & Co.*, 86 Wash. 23, 149 Pac. 330, Ann. Cas. 1917B, 625, it is said:

"The appellant urges the unconstitutionality of the other provisions of the law to render the entire act void. We conceive it to be the unquestioned rule that a person cannot invoke a constitutional objection to a part of a statute not applicable to his own particular case. *Southern R. Co. v. King*, 217 U. S. 524; *Engel*

*v. O'Malley,* 219 U. S. 128; *Standard Stock Food Co. v. Wright,* 225 U. S. 540; *Rosenthal v. People of New York,* 226 U. S. 260; *Darnell v. Indiana,* 226 U. S. 390; *Cram v. Chicago, B. & Q. R. Co.,* 85 Neb. 586, 123 N. W. 1045, 26 L. R. A. (N. S.) 1028; *Wadin v. Czuczka* (Ariz.), 146 Pac. 491. Unless a person's rights are directly involved, courts will postpone inquiry into constitutional questions which are separable therefrom until they are met upon a question directly at issue, unless the unconstitutional feature of it, if it exists, is of such a character as to render the entire act void. *New York Cent. & H. R. R. Co. v. United States,* 212 U. S. 481; *People v. Huff,* 249 Ill. 164, 94 N. E. 61; *Hammer v. State,* 173 Ind. 199, 89 N. E. 850, 140 Am. St. 248, 24 L. R. A. (N. S.) 795; *Wadin v. Czuczka, supra.*"

■ It is the settled rule in this state that the courts will not inquire into the validity of an act of the legislature, unless it appears on the face of the act itself, or from facts of which the court may take judicial notice, that the act is invalid. *State ex rel. Trenholm v. Yelle,* 174 Wash. 547, 25 P. (2d) 569, 28 P. (2d) 1119. In the act now before us, nothing appears on its face and there are no facts of which we can take judicial notice which would indicate that the act is invalid.

The judgment will be affirmed.

BEALS, C. J., MITCHELL, TOLMAN, HOLCOMB, BLAKE, STEINERT, and GERAGHTY, JJ., concur.

MILLARD, J. (dissenting)—I dissent. The taxes imposed by the act are levied and collected for state purposes; § 96 of the act so declares. The taxes are to be collected by the board, and may be expended by the board in its discretion for any of the purposes mentioned in the act. All taxes for state purposes are required, by § 6, Art. VII of the constitution, to be paid into the state treasury. Section 4, Art. VIII of the con-

stitution as amended by the 11th amendment, provides that

"No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within one calendar month after the end of the next ensuing fiscal biennium, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum."

The act contravenes the constitutional provision requiring payment of state taxes into the state treasury, and is violative of the constitutional provision requiring expenditures to be made by legislative appropriation not valid for more than twenty-five months.

We said in *State ex rel. Peel v. Clausen,* 94 Wash. 166, 162 Pac. 1, that

"The object of the constitution art. 8, § 4, and the statute cited, is to prevent expenditures of the public funds at the will of those who have them in charge, and without legislative direction.

" 'Its object is to secure to the legislative department of the government the exclusive power of deciding how, when, and for what purposes the public funds shall be applied in carrying on the government (2 Opinions Attorneys-General, 670). It had its origin in Parliament in the seventeenth century, when the people of Great Britain, to provide against the abuse by the king and his officers of the discretionary money power with which they were vested, demanded that the public funds should not be drawn from the treasury except in accordance with express appropriations therefor made by Parliament.' *Humbert v. Dunn,* 84 Cal. 57, 24 Pac. 111.

"It is well understood that these provisions—and they are common to most, if not all, of our written con-

stitutions— are mandatory, and that no moneys can be paid out without the sanction of the legislative body.''

See, also, *State ex rel. Davis v. Clausen,* 160 Wash. 618, 295 Pac. 751, and *State ex rel. Trenholm v. Yelle,* 174 Wash. 547, 25 P. (2d) 569, 28 P. (2d) 1119.

The act also offends against subsection (c) of § 1, Art. II of the constitution, which provides that

''No act, law, or bill approved by a majority of the electors voting thereon shall be amended or repealed by the legislature within a period of two years following such enactment.''

