[No. 25801. Department Two. September 3, 1935.]

THE STATE OF WASHINGTON, *on the Relation of E. F. Banker, as Director of Conservation and Development, Plaintiff,* v. CLIFF YELLE, *as State Auditor, Respondent.*[1]

[1]Reported in 48 P. (2d) 573.

*Preston, Thorgrimson & Turner* and *Stratton, Leader, Little & Stratton,* for relator.

*The Attorney General* and *Geo. G. Hannan, Assistant,* for respondent.

HOLCOMB, J.—This is an original application on notice for a peremptory mandate directing the state auditor to allow an expense voucher duly authenticated by the director of conservation and development and to issue a warrant for the amount of such voucher.

The question to be decided is whether or not relator, as such director, has authority under chapter 7, Laws of 1935, p. 17 (Rem. 1935 Sup., § 3008), to issue collateral trust bonds in the form and under the provisions of a trust indenture designated as an exhibit and made a part of the affidavit of relator.

In 1919, the state legislature passed the "state reclamation act," the object of which was the reclamation and development of the arid, swamp, overflow and logged-off lands in the state economically avail-

able for reclamation and development as agricultural lands. To carry out the purposes of the act, a state reclamation revolving fund was created in the state treasury to consist of all sums that might from time to time be appropriated thereto by the legislature from other funds in the state treasury; of gifts, donations, bequests and devises made to the state therefor, and the proceeds of the sale thereof; the proceeds of the sale or redemption of, and the interest earned by, securities purchased or acquired with the moneys thereof; all reimbursements or moneys advanced for the payment of assessments upon state, school, granted and other public lands for the improvement thereof; and all taxes received under levies authorized by the legislature therefor. A state reclamation board was set up to administer the act, but in 1923 the duties of that board were transferred to the director of conservation and development.

Although reclamation districts are not clearly defined in the act, they were undoubtedly intended to include, and have been construed by the director to include, diking, drainage and irrigation districts under chapter 158, Laws of 1919, §§ 4 and 7, pp. 444, 447, Rem. Rev. Stat., §§ 3007 and 3010 [P. C. §§ 98-22, 98-25]; and chapter 132, Laws of 1923, § 2, p. 363 (Rem. Rev. Stat., § 3010 [P. C. § 98-25]).

. Since the creation of the fund, tax moneys have been paid into the fund annually up to 1931, and an appropriation from the general fund into the revolving fund has been made. From the moneys available in the revolving fund, the director, carrying out the designated purposes of the act, has purchased in connection with refinancing proceedings the bonds of a number of municipal reclamation districts of the state. According to his seventh biennial report, there has

been spent for that purpose approximately three million dollars.

Of recent years, the financial condition of many of the various reclamation districts has been deplorable, and the demands upon the director for refinancing the bonded indebtedness of these districts has been urgent. The director has been badly handicapped in doing this work by lack of money, according to his report.

Because of the lack of funds in the various reclamation districts, which were so greatly in need of refinancing, in 1933 the legislature passed a special act, chapter 13, Laws Ex. Ses. 1933, p. 37 (Rem. 1934 Sup., § 3008), specifically authorizing him to borrow money upon the security of any bonds of any reclamation district in the state revolving fund. This act was further amended by chapter 7, Laws of 1935, p. 17 (Rem. 1935 Sup., § 3008), and the particular provision permitting the borrowing of money upon the security of the bonds was not changed. Meanwhile, the director has attempted to borrow money as authorized by the 1933 and now by the 1935 act, according to his seventh biennial report. This could not be done without the issuance of definitive bonds under some valid instrument adequately pledging the security.

The appropriation made by the legislature in 1935 of $1,250,000 from the revolving fund expressly limits expenditures for financing and refinancing purposes to cash on hand and available for expenditure. Chapter 183, Laws of 1935, p. 865. Relator's affidavit alleges that there is urgent need for cash with which to proceed with refinancing operations. It is in an effort to obtain this cash, so that the amount appropriated, or such part thereof as shall be necessary, may be expended, that the director proposes to issue collateral trust bonds pursuant to the terms of the form of that indenture.

The only resistance made by respondent, through the *Attorney General,* is by way of demurrer upon the grounds that the affidavit and petition do not state facts sufficient to constitute a cause of action, particularly in that the bond proposed to be executed would bind the department of conservation and development, and thereby the state, for the payment of the money represented by such bond; and that the bond, when executed in such form, will purport to be, and will be, an obligation of the department of conservation and development of the state in an amount exceeding its constitutional power to become obligated; and that the act, purporting to authorize the pledging of the bonds in the hands of the director, does not authorize the director to execute a bond or indenture of the form and character shown in the exhibit to relator's petition.

Chapter 7, Laws of 1935, § 5, p. 17 (Rem. 1935 Sup., § 3008), so far as pertinent, authorizes the director

"To sell and dispose of any reclamation district bonds acquired by the director, at public or private sale, and to pay the proceeds of such sale into the reclamation fund: . . .

"To borrow money upon the security of any bonds, including refunding bonds, of any reclamation district, acquired by the director, on such terms and rate of interest and over such period of time as the director may see fit, and to hypothecate and pledge reclamation district bonds or refunding bonds acquired by the director as security for such loan. Such loans shall have, as their sole security, the bonds so pledged and the revenues therefrom, and the director shall not have authority to pledge the general credit of the state of Washington: . . ."

The above quoted provisions of the statute empower the director to sell and dispose of reclamation district bonds and to borrow money upon the security of the bonds. They are silent as to the issuance of bonds

by the director for the purpose of evidencing the pledge and borrowing the money.

■ The primary question immediately presents itself as to whether the power to issue bonds is necessarily implied in the power to borrow money and to pledge the reclamation district bonds as security for that purpose, particularly when coupled with the even broader power to sell and dispose of such reclamation district bonds.

It would seem only logical that the power to borrow money upon the security of any bonds, including refunding bonds of any reclamation district acquired by the director and the pledge of such bonds as security for that purpose, must necessarily imply the power to execute such formal instrument as is necessary, and does not pledge the general credit of the state to secure such reclamation bonds.

"A power to borrow money, surely it need not be argued, includes the power to give bonds or other usual securities to the lender. We cannot be expected to decide that the bonds are illegal, because the Act of Assembly did not specify what securities might be given for the money borrowed, or that a power to borrow money to pay a debt, including as it does the power to issue bonds, is not executed by giving bonds to the creditor. In substance, the money is borrowed from the purchasers of the bonds; it is advanced on the faith of the city's obligations, for the very purpose for which the city was authorized to raise it.. . . . It has never before been doubted, that he is a borrower, who executes his bonds payable to bearer, and then, by his agent, sells them in the market." *Commonwealth ex rel. Hamilton v. The Select & Common Councils of the City of Pittsburgh*, 34 Pa. 496.

To the same effect are: *In re Contracting of State Debt by Loan*, 21 Colo. 399, 41 Pac. 1110; *Jones v. Board of Education of Guilford County*, 185 N. C. 303,

117 S. E. 37; *Juilliard v. Greenman* (Legal Tender Case), 110 U. S. 421, 4 S. Ct. 122; *Arnold v. Bond,* 34 P. (2d) (Wyo.) 28; 59 C. J. 972.

We conclude, therefore, that the power to issue bonds is necessarily implied in the power to borrow money and pledge the reclamation security bonds for that purpose, authorized by the above quoted statute; provided always that the general credit of the state is not pledged.

The next important question is whether or not the issuance of collateral trust bonds under the trust indenture exhibit would constitute a debt of the state within the meaning of Art. VIII, § 3, of the state constitution, requiring the submission of the question of incurring indebtedness to the people of the state and a compliance with the other provision contained in that article.

We have consistently held, from early days to and including *Twichell v. Seattle,* 106 Wash. 32, 179 Pac. 127, that a municipality may contract for the purchase of a public utility payable only from the revenues of the utility and not be deemed to create a municipal indebtedness within the meaning of the state constitution relating to them forbidding it.

In *State ex rel. State Capitol Committee v. Clausen,* 134 Wash. 196; 235 Pac. 364, we held that chapter 27, Laws of 1925, p. 61, providing for the bonding of the capitol building lands, the principal and interest to be payable only from revenues thereafter received from the lease or sale of granted lands which the state holds in trust in its representative capacity, does not create a debt without a vote of the people in violation of the constitution, Art. VIII, § 3. We also held in that case that, under that act, the bonds being payable only out of revenues received from the lease or

sale of granted lands which are paid into the capitol building fund, it was not the proper form to issue bonds in which the state acknowledged its indebtedness and promised to pay the same out of the capitol building and construction fund, derived in part from general taxation.

In *Ajax v. Gregory*, 177 Wash. 465, 32 P. (2d) 560, which involved portions of the state liquor control act (chapter 62, Laws Ex. Ses. 1933, p. 173, Rem. 1934 Sup., § 7306-1 [P. C. § 3180-11] *et seq.*), in which law, by § 76, p. 207, Rem. 1934 Sup., § 7306-76 [P. C. § 3180-87], the state liquor control board is authorized to issue and sell bonds, payable only out of the liquor revolving fund in the amount of $1,305,000, and further provides that each bond and interest coupon attached shall show on its face that it is payable solely from the liquor revolving fund, and not otherwise, and that neither the state of Washington nor any board, or any member thereof, shall incur any liability or obligation by reason of the authority granted in that section and creating a cash reserve of five hundred thousand dollars, we reaffirmed the rule stated in the *Clausen* case, *supra,* and held that there was not created any state indebtedness within the contemplation of the constitution, and that there was no substantial distinction between the *Clausen* case and that case.

Neither is there any substantial difference in the instant case and the *Clausen* and *Ajax* cases, *supra.*

We consider the question settled by our own decisions, but the same principles have been sustained by very reputable authorities. *Briggs v. Greenville County,* 137 S. C. 288, 135 S. E. 153; *State ex rel. Veeder v. State Board of Education,* 97 Mont. 121, 33 P. (2d) 516; *California Toll Bridge Authority v.*

*Kelly,* 218 Cal. 7, 21 P. (2d) 425; *Moses v. Meier,* 148 Ore. 185, 35 P. (2d) 981; *Arnold v. Bond, supra.*

We conclude, therefore, that the proposed bond issue will not violate Art. VIII of our constitution; provided always, as heretofore stated, that each such bond and coupon attached thereto shall show on the face that it is payable solely from the pledged securities in the reclamation revolving fund of the state of Washington and not otherwise, and that neither the state nor the board nor any member thereof shall incur any liability or obligation by reason of the authority granted by this law.

The third and last question to be determined is whether the power given to the director to issue a collateral trust bond constitutes a delegation of legislative authority.

Section 5, heretofore quoted, authorizes the director to select the security for the bonds, authorizes the hypothecation and pledge of the security so selected and authorizes him to borrow money "on such terms and rate of interest and over such period of time as the director may see fit."

This narrow delegation of discretion is not a broad delegation of discretion to do whatever is necessary to effectuate a stated public policy such as was found to be true of the statutes in question in *Uhden v. Greenough,* 181 Wash. 412, 43 P. (2d) 983, and *Griffiths v. Robinson,* 181 Wash. 438, 43 P. (2d) 977. Such a delegation is clearly a delegation of administrative rather than legislative power.

*State ex rel. Chicago, Milwaukee & St. Paul R. Co. v. Public Service Commission,* 94 Wash. 274, 162 Pac. 523; *Larsen v. Rice,* 100 Wash. 642, 171 Pac. 1037; *In re California Toll Bridge Authority,* 212 Cal. 298, 298 Pac. 485; *Department of Water and Power of*

*City of Los Angeles v. Vroman,* 218 Cal. 206, 22 P. (2d) 698; *Bates v. State Bridge Commission,* 109 W. Va. 186, 153 S. E. 305; *Bloxton v. State Highway Commission,* 225 Ky. 324, 8 S. W. (2d) 392; *Livesay v. De Armond,* 131 Ore. 563, 284 Pac. 166, 68 A. L. R. 422, are all to the same effect.

From the lack of opposition on the part of the office of the *Attorney General,* we apprehend that it is considered by that office that the present case is controlled by the *Clausen* and *Ajax* cases heretofore cited. It is to be understood that it will be the duty of that office to scrutinize the bonds and any subsequent series of bonds to be issued by relator in such manner as to carefully limit the terms of the bonds, as was done in the above two cited cases by this court.

For the reasons herein stated, we conclude that the peremptory writ should issue. It is so ordered.

TOLMAN, MITCHELL, STEINERT, and BLAKE, JJ., concur.