[No. 27248. *En Banc.* August 4, 1938.]

THE STATE OF WASHINGTON, *on the Relation of the Washington Toll Bridge Authority et al., Plaintiff, v. CLIFF YELLE, as State Auditor, Respondent, N. C. JANNSEN et al., Interveners.*[1]

[1]Reported in 82 P. (2d) 120.

*The Attorney General,* L. C. *Brodbeck* and *John E. Belcher, Assistants,* for relators.

*E. W. Anderson,* for respondent.

*Patrick Henry Winston,* for interveners.

HOLCOMB, J.—This is an original mandamus action, instituted in this court by relators to compel the state auditor to audit and approve certain vouchers, duly authenticated by the Washington toll bridge authority and the state director of highways, for the expenses incurred incident to the preliminary plans and survey of the proposed "Narrows bridge" in Pierce county. By a special leave of court, N. C. Jannsen, doing business as N. C. Jannsen Drilling Company, and one George Stevens were permitted to intervene.

For several years, the inhabitants of Pierce county have had under consideration a project which envisages, through the construction of a bridge across a certain portion of the navigable waters of Puget sound known as "the Narrows," the connection of the city of

Tacoma more directly with the mainland of what is known as the peninsular district of that county, now exclusively served by a ferry system, and the acquisition of the present ferry system, at a total cost of six million dollars.

The United States government has, through the public works administration, made a grant of $2,700,000, and the toll bridge authority proposes to issue revenue bonds pursuant to chapter 173, Laws of 1937, § 7, p. 658, Rem. Rev. Stat., Vol. 7A, § 6524-7 [P. C. § 2697-508], relating to toll bridges, in the sum of $3,300,000, to be purchased by a Federal government agency to complete the financing of the project.

Under the terms of the grant, work must be commenced as early as possible, but in no event later than ten weeks subsequent to June 27, 1938.

For some time previous to April 25, 1938, Pierce county had sponsored a project, and had made application to the public works administration of the United States for financial assistance and cooperation in the construction of this proposed toll bridge. April 25, 1938, however, Pierce county, by virtue of a resolution of its board of commissioners, transferred the sponsorship of the projected bridge to the toll bridge authority, with a request that it construct, operate, maintain, and provide for the financing of the toll bridge under the provisions of chapter 173, Laws of 1937, p. 654, Rem. Rev. Stat., Vol. 7A, § 6524-1 [P. C. § 2697-501] *et seq.*, in conjunction with the public works administration of the United States. The Pierce county commissioners also made available to the toll bridge authority the sum of twenty-five thousand dollars from funds which had accrued, or might accrue, to the credit of Pierce county in the motor vehicle fund by virtue of the provisions of chapter 208, Laws of 1937, p. 1013, Rem. Rev. Stat., Vol. 7A, § 6600-1 [P. C. § 2696-101] *et seq.*

Acceding to the request of Pierce county, and acting pursuant to chapter 173, Laws of 1937, the toll bridge authority accepted the sponsorship of the bridge, which necessarily involved financing, constructing, and operating a toll bridge, subject to the approval and in conjunction with the public works administration of the United States. June 27, 1938, the United States, through the Federal emergency administrator of public works, made a written offer to the Washington toll bridge authority to aid in financing the construction of the proposed bridge and the approaches thereto, and to assist in acquiring the necessary lands and rights of way therefor. By resolution, the Washington toll bridge authority declared the construction of the toll bridge was necessary, advantageous, and practicable, and instructed the director of highways to make a further investigation, examination, reconnaissance, and survey, and to draft such preliminary plans and obtain such preliminary data as might be requisite to the financing of the bridge.

The claims involved here were incurred for services rendered in connection with the preliminary investigation and survey of one N. C. Jannsen, doing business as N. C. Jannsen Drilling Company, and George Stevens, a designing engineer.

It is admitted that these persons have already rendered their services in accordance with their contract with the director of highways, and that the sum of $2,621.50 and the sum of $41.94 became due and owing to Jannsen and Stevens from the toll bridge authority. Notwithstanding the presentation of duly authenticated vouchers for these amounts, the state auditor has refused to issue warrants therefor upon the motor vehicle fund.

In his return to the application for the writ, respondent denied that relator was entitled to the relief prayed

for because chapter 173, Laws of 1937, is unconstitutional for several reasons.

The validity of the claims hereinbefore referred to is the question presented for decision. It is conceded that these claims are a proper charge against the funds of the state highway department, provided chapter 173, Laws of 1937, is a valid enactment.

The Washington toll bridge authority, an administrative body composed of the governor, the state auditor, the director of public service, the director of highways, and the director of finance, business and budget, was created by chapter 173, Laws of 1937.

Chapter 173, § 3, p. 656, Rem. Rev. Stat., Vol. 7A, § 6524-3 [P. C. § 2697-503], reads:

"The Washington Toll Bridge Authority is empowered, in accordance with the provisions of this act, to provide for the establishing and constructing of toll bridges upon any public highways of this state together with approaches thereto wherever the same is considered necessary or advantageous and practicable for crossing any stream, body of water, gulch, navigable water, swamp or other topographical formation whether the same is within this state or constitutes a boundary between this state and an adjoining state or country. The necessity or advantage and practicability of any such toll bridge shall be determined by the Washington Toll Bridge Authority and the feasibility of financing any toll bridge in the manner provided by this act shall be a primary consideration and determined according to the best judgment of the Washington Toll Bridge Authority. For the purpose of obtaining information for the consideration of the authority upon the construction of any toll bridge or any other matters pertaining thereto it shall be the duty of any cognizant officer or employee of the state upon the request of the authority to make reasonable examination, investigation, survey or reconnaissance for the determination of material facts pertaining thereto and report the same to the authority. The cost of any such examination, investigation, survey or reconnais-

sance shall be borne by the department or office conducting the same from the funds provided for such department or office for its usual functions."

Chapter 173, Laws of 1937, § 12, p. 664, Rem. Rev. Stat., Vol. 7A, § 6524-12 [P. C. § 2697-513], provides that any city, county, or other political subdivision of the state may, upon the request of the director of highways or of the toll bridge authority, advance or contribute money, rights of way, labor, materials and other property toward the expense of building the toll bridge, and to defray the costs of preliminary surveys and the preparation of plans and estimates of costs therefor.

We consider now the reasons assigned by respondent in his return which form the basis of his contention that chapter 173, *supra,* is not a valid enactment.

■ First, it was urged that this act contemplates the incurring of a debt of the state of Washington in excess of that permitted to be incurred without a vote of the electors under Article VIII, §§ 1, 2, and 3 of the state constitution.

It should be observed that chapter 173, Laws of 1937, § 7, p. 658, Rem. Rev. Stat., Vol. 7A, § 6524-7 [P. C. § 2697-508], provides:

"The Washington Toll Bridge Authority is hereby empowered to issue bonds for the construction of any toll bridge or toll bridges authorized under the provisions of this act. Any and all bonds issued for the construction of any toll bridge or toll bridges under the authority of the Washington Toll Bridge Authority, shall be issued in the name of the Washington Toll Bridge Authority and *shall constitute obligations only of said Washington Toll Bridge Authority* and shall be identified as ........................ Toll Bridge Bonds and shall contain a recital on the face thereof that the payment or redemption of said bonds and the payment of the interest thereon is secured by a direct and exclusive

charge and lien upon the tolls and other revenues of any nature whatever received from the operation of the particular toll bridge or bridges for the construction of which the bonds are issued and that *neither the payment of the principal or any part thereof nor of the interest thereon or any part thereof constitutes a debt, liability or obligation of the State of Washington.* The Washington Toll Bridge Authority is empowered to receive and accept funds from the State of Washington or the Federal government upon a cooperative or other basis for the construction of any toll bridge authorized under this act and is empowered to enter into such agreements with the State of Washington or the Federal government as may be required for the securing of such funds." (Italics ours.)

In his brief and in oral argument, counsel for respondent receded from this first contention and admitted that revenue bonds, such as contemplated by this act, do not constitute a general obligation of the state, and therefore do not offend the debt limitation provisions of the constitution.

With this conclusion we are in accord, because no state indebtedness within the contemplation of the constitutional prohibition has been created under the provisions of this act. *State ex rel. State Capitol Committee v. Clausen,* 134 Wash. 196, 235 Pac. 364; *Ajax v. Gregory,* 177 Wash. 465, 32 P. (2d) 560; *State ex rel. Banker v. Yelle,* 183 Wash. 380, 48 P. (2d) 573. See, also, *Bates v. State Bridge Com'n,* 109 W. Va. 186, 153 S. E. 305; *Klein v. Louisville,* 224 Ky. 624, 6 S. W. (2d) 1104; *In re California Toll Bridge Authority,* 212 Cal. 298, 298 Pac. 485; *California Toll Bridge Authority v. Kelly,* 218 Cal. 7, 21 P. (2d) 425.

Next, it is contended that the title of this act is deficient under Article II, § 19, of the state constitution, which prescribes:

"No bill shall embrace more than one subject, and that shall be expressed in the title."

While the title might have been more happily worded, we are satisfied that it affords such notice of its purpose and object as reasonably to lead to inquiry into the body of the act, and to meet the requirements of this constitutional provision. *In re Peterson's Estate,* 182 Wash. 29, 45 P. (2d) 45; *Shea v. Olson,* 185 Wash. 143, 53 P. (2d) 615, 111 A. L. R. 998; *State v. Hanlen,* 193 Wash. 494, 76 P. (2d) 316.

Respondent also urges that this act unlawfully delegates legislative authority, because it confers upon the toll bridge authority the right to determine when and where the state may acquire or construct a bridge involving the expenditure of large sums of money.

The complete separation of governmental powers into the legislative, the executive, and the judicial is impossible. In order to cope effectively with many complex relations created by modern society, it is necessary to vest in administrative officers or bodies powers partaking of any two or all of these functions. The legislature manifestly cannot delegate the power to make purely substantive law, but may delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action dependent, provided it has enunciated a standard by which such an administrative body must be guided. *State ex rel. Chicago, Milwaukee & St. Paul R. Co. v. Public Service Commission,* 94 Wash. 274, 162 Pac. 523; *State v. Bayles,* 121 Wash. 215, 209 Pac. 20; *Royer v. Public Utility District No. 1,* 186 Wash. 142, 56 P. (2d) 1302.

Mindful of these rules, we proceed to determine whether or not this act constitutes an invalid delegation of essentially legislative functions.

In *Estes v. State Highway Commission,* 235 Ky. 86, 29 S. W. (2d) 583, the Kentucky court of appeals had before it the toll bridge act, the purpose of which was

to confer power upon the state highway commission to enter upon a plan of constructing bridges, connecting the traveling public with the primary roads of the state. It was contended that the legislature had abdicated its legislative functions and conferred them upon the state highway commission. The court held the legislature had not delegated its legislative power, but had merely conferred administrative power upon the commission. See *Klein v. Louisville, supra,* and *In re California Toll Bridge Authority, supra.*

Chapter 173, § 3, *supra,* provides for the establishment and construction of toll bridges whenever the same is considered necessary, advantageous, and practicable for crossing certain bodies of water. The act creates an administrative body and prescribes a standard to carry out a declared legislative purpose upon the determination of certain material facts, and hence does not constitute an invalid delegation of legislative power.

Finally, it is contended that the action taken by the toll bridge authority pursuant to chapter 173, Laws of 1937, contemplates the payment of special funds out of the state treasury or of funds under its management without a legislative appropriation, as required by Article VIII, § 4 of the state constitution, as amended by the eleventh amendment.

As above indicated, the toll bridge authority is to receive $2,700,000 from the Federal public works administration, and the remainder of the cost of the bridge will be defrayed by a bond issue payable exclusively out of revenues derived from the operation of the bridge.

Chapter 173, Laws of 1937, § 14, p. 666, Rem. Rev. Stat., Vol. 7A, § 6524-14 [P. C. § 2697-515], provides in part:

"Warrants for payments to be made on account of such bonds shall be duly drawn by the state auditor on

vouchers approved by the Washington Toll Bridge Authority."

While it is apparent that the act contemplates the approval by the state auditor of vouchers duly authenticated by the toll bridge authority such as we have involved here, still the act does not expressly provide for an appropriation of the moneys to which we have referred.

Under § 7, *supra,* it should be noted that the payment or redemption of toll bridge bonds issued pursuant to chapter 173, *supra,* together with the payment of interest thereon, is secured by a direct and exclusive lien upon the tolls and the revenues of whatever nature received from the operation of the particular toll bridge, and that the general credit of the state has not been extended to the payment of the principal or interest on such bonds, and these obligations under this act do not constitute either a moral or legal debt or liability, existing or contingent, of the state of Washington.

Chapter 173, Laws of 1937, § 14, p. 666, Rem. Rev. Stat., Vol. 7A, § 6524-14 [P. C. § 2697-515], provides in part:

"The proceeds from the sale of all bonds authorized under the provisions of this act shall be paid to the state treasurer for the credit of the Washington Toll Bridge Authority and be deposited as demand deposits forthwith in such depositary or depositaries as may be authorized by law to receive deposits of state funds to the credit of a fund to be designated as the construction fund of the particular toll bridge or toll bridges for which such bonds were issued and sold, *which fund shall not be a state fund* and shall at all times be kept segregated and set apart from all other funds and in trust for the purposes herein set out. . . .

"All tolls or other revenues received from the operation of any toll bridge or toll bridges constructed with the proceeds of bonds issued and sold hereunder shall

be paid over by the director of highways to the state treasurer who shall deposit the same forthwith as demand deposits in such depositary or depositaries as may be authorized by law to receive deposits of state funds to the credit of a special trust fund to be designated as the toll revenue fund of the particular toll bridge or toll bridges producing such tolls or revenue, which fund shall be a trust fund and shall at all times be kept segregated and set apart from all other funds."

Thus the proceeds from the sale of the bonds under this act are (1) to be paid to the state treasurer; (2) to be credited to the toll bridge authority; (3) to be deposited as demand deposits in depositaries authorized to receive deposits of state funds; (4) to be kept segregated from all other funds and credited to the construction fund of the particular toll bridge; and (5) not to be a state fund.

Article VII, § 6, of the state constitution, prescribes:

"All taxes levied and collected for state purposes shall be paid in money only into the state treasury."

We have held the license fees provided for in the Washington state liquor act, chapter 62, Laws of 1933, Ex. Ses., p. 173, Rem. Rev. Stat. (Sup.), § 7306-1 [P. C. § 3180-11] et seq., do not come within this provision of the constitution, and that the legislature has the right to establish a revolving fund therefor. *Ajax v. Gregory, supra.*

Manifestly, the grant by the works progress administration and the moneys obtained through the sale of revenue bonds under this act can in no wise be said to be taxes within the meaning of the above mentioned constitutional provision.

We now consider and determine whether the tolls, the principal source of revenue of the toll bridge authority, to be obtained from the operation of the proposed bridge, brings the funds of the toll bridge au-

thority within the purview of this constitutional provision.

A "toll" has been thus defined:

"A 'toll' is a 'sum of money for the use of something, generally applied to the consideration which is paid for the use of a road, bridge or the like, of a public nature.'" 1 Cooley, Taxation (4th ed.) 77, § 14.

"Toll is the price of the privilege of travel over that particular highway, and it is a *quid pro quo*. It rests on the principle that he who receives the toll does or has done something as an equivalent to him who pays it." *St. Louis v. Green,* 7 Mo. App. 468.

A toll is not a tax, it being an exaction for compensation for the use of a bridge, whereas a tax is a demand of the sovereign. *St. Louis v. Western Union Telegraph Co.,* 148 U. S. 92, 13 S. Ct. 485, 37 L. Ed. 380; *Bloxton v. State Highway Commission,* 225 Ky. 324, 8 S. W. (2d) 392.

Thus it is certain that the funds of the toll bridge authority are not derived from the collection of taxes, and are not required, under the above constitutional provision, to be paid into the state treasury.

Article VIII, § 4, of the state constitution, as amended by amendment 11, provides:

"No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within one calendar month after the end of the next ensuing fiscal biennium, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum."

Since these funds are payable to the state treasurer under § 14 of the act, it is necessary to determine

whether any disbursements may be made of such funds in the absence of an appropriation therefor.

In the final analysis, the test of whether the state treasurer, under this act, is acting as such, or merely as a convenient, qualified, and suitable official to serve as the custodian of the funds of an administrative body, namely, the toll bridge authority, is whether its funds are required by the constitution to be placed with the state treasurer. The mere fact the state treasurer is called upon to render certain services with respect to these funds in no wise makes the moneys so received by him state funds in the state treasury.

Viewing the act as a whole, and bearing in mind that the great bulk of the revenues of the toll bridge authority are not taxes, that the funds deposited with the treasury were expressly declared not to be state funds, that the funds were to be credited to the toll bridge authority and segregated from all other funds and not to be paid into the state treasury, we think the legislature could have provided that the funds of the toll bridge authority be paid into a revolving fund as in the Washington state liquor act, *supra,* or placed in the custody of some other competent and qualified state official, and therefore the funds of the toll bridge authority under this act may be expended as directed by the legislature without a specific appropriation.

*State ex rel. Sherman v. Pape,* 103 Wash. 319, 174 Pac. 468, involved an application for a writ of mandate to compel the state forester and fire warden to pay certain moneys into the state treasury collected from property owners pursuant to certain contracts for protection of their property from fire. Relator argued that it was the manifest intention of the constitutional provision that all moneys collected by the state for any purpose are required to be paid into the state treasury and can only be disbursed in pursuance of an appropri-

ation by the legislature, although moneys collected under some particular statute may not be what could technically be called funds belonging to the state. It was held that no appropriation was necessary, and that relator was not entitled to have the funds paid into the state treasury.

We observed:

"In the exercise of its police power the state undoubtedly could have made all funds its own, to be dealt with as state funds contemplated by the constitution; but it was not necessary so to do. The legislative wisdom could in its discretion provide for the collection and administration of the funds without making them state or public funds. This the legislature by this act undoubtedly did, and it is not our business to question its wisdom. These funds were not taxes levied and collected for state purposes generally, but were assessments laid upon private lands particularly for the benefits done those private lands. It was not necessary, therefore, that the sums imposed and collected should come into the state treasury as provided by art. 7, § 6."

Respondent cites *State ex rel. Shuff v. Clausen,* 131 Wash. 119, 229 Pac. 5, to support his contention that an appropriation is a necessary condition precedent to the expenditure of the funds of the toll bridge authority. That case is distinguishable from the present case, because it involved contributions under the workmen's compensation act, which were required to be paid into the state treasury by virtue of a positive command of the legislature, embodied in Rem. Rev. Stat., § 7676 [P. C. § 3471].

Respondent also relies upon *State ex rel. Davis v. Clausen,* 160 Wash. 618, 295 Pac. 751, in which we held that certain funds of the state college of Washington, although in the nature of special funds, nevertheless were funds of the state and could not be disbursed by the state treasurer except pursuant to an appropria-

tion. That case is distinguishable from the case at bar, in that a state institution was involved in that case; there was no statutory provision expressly providing the funds in question were not state funds; and in neither that case nor in *State ex rel. Shuff v. Clausen, supra,* did this court have before it for decision the question whether all funds held by the state treasurer were subject to appropriation or whether, when the state treasurer was merely acting as custodian of funds of an administrative body, such funds became subject to the constitutional provision requiring an appropriation.

We conclude that chapter 173, *supra,* does not contemplate the payment of the funds involved into the state treasury or into the hands of the state treasurer as such, but only to the state treasurer as special custodian for the toll bridge authority, and hence no appropriation is required for the disbursement of these funds under Article VIII, § 4, as amended by Amendment 11.

Let the writ issue.

The parties hereto having stipulated to waive costs, they shall not be taxed to either party.

STEINERT, C. J., MAIN, BEALS, MILLARD, BLAKE, ROBINSON, and SIMPSON, JJ., concur.

GERAGHTY, J., concurs in the result.