[No. 24646.  Department Two.  October 2, 1933.]

THE STATE OF WASHINGTON, *on the Relation of Samuel Trenholm, Plaintiff,* v. CLIFF YELLE, *as State Auditor, Respondent.*[1]

[1]Reported in 25 P. (2d) 569.

*John H. Dunbar,* for relator.

*The Attorney General* and *John W. Hanna, Assistant,* for respondent.

STEINERT, J.—The relator seeks a writ of mandate from this court to compel the state auditor to issue to him a warrant in the sum of one thousand dollars. His claim is rested upon a certain provision of the general appropriation act passed by the legislature of 1933, which, so far as is material here, reads as follows:

"Sec. 2. The following sums, . . . are hereby appropriated out of any of the monies in the several funds in the state treasury hereinafter named ·. . .:

"FROM THE ACCIDENT FUND.

"For the relief of Samuel Trenholm...$1,000.00

"In full settlement of claim for injuries." Chap. 190, Laws of 1933, pp. 848, 867, § 2.

Pursuant to the passage of that act, relator prepared and presented to the state auditor his voucher for the payment of the claim and demanded a warrant for the amount previously appropriated. The state auditor, however, on advice of the *Attorney General,* refused to issue the warrant. Upon application made by relator, an alternative writ issued from this court directing the state auditor to pay the warrant or else to show cause why he should not be commanded to do so. The auditor appeared by demurrer to relator's application, and also by answer to both the application and the alternative writ. The matter is before us on these pleadings.

It is the settled rule in this state that the courts will not inquire into the validity of an act of the legis-

lature, unless it appears on the face of the act itself, or from facts of which the court may take judicial notice, that the act is invalid. *Farquharson v. Yeargin,* 24 Wash. 549, 64 Pac. 717; *State ex rel. Govan v. Clausen,* 108 Wash. 133, 183 Pac. 115; *State ex rel. Lister v. Clausen,* 108 Wash. 146, 183 Pac. 120. There is no dispute, in this case, as to the rule itself. The only question here is whether it appears on the face of the act, or from facts of which the court may take judicial notice, that the appropriative provision is invalid.

■ The act in question discloses upon its face that the payment is to be made from the accident fund. We will, of course, take judicial notice of the fact that the "fund" referred to is the accident fund set up and provided for under the workmen's compensation act, Rem. Rev. Stat., § 7673 *et seq.,* particularly § 7676, as amended by Chap. 193, Laws of 1933, p. 909 (Rem. 1933 Sup., § 7676). There is no other fund of the state known or denominated as the "accident fund."

■ ■ Rem. Rev. Stat., § 7705, which is a part of our present workmen's compensation act, provides:

"Disbursement out of the funds shall be made *only upon warrants drawn by the state auditor upon vouchers therefor transmitted to him by the department* and audited by him. The state treasurer shall pay every warrant out of the fund upon which it is drawn." (Italics ours.)

In this case, no voucher has been issued by the department or transmitted to, or audited by, the state auditor, and, of course, no warrant has been issued by that officer.

The purpose of the workmen's compensation act, as originally enacted, and as amended from time to time by later statutes, has been, and is, to provide compensation for workmen injured in extrahazardous occupations as defined by the act. To that end, the

act has created and established two funds known as the "accident fund" and the "medical aid fund," respectively. The industries of the state engaged in extrahazardous work are required to pay into the accident fund certain premiums according to the schedule provided. The workmen so engaged are required to pay a certain percentage of their wages into the medical aid fund for its maintenance. These funds are therefore trust funds drawn from particular sources and devoted to special purposes. By the act itself, the fund is impressed with a trust.

"The fund thereby created shall be termed the 'accident fund' which shall be devoted to the purpose specified for it in this act." Rem. Rev. Stat., § 7676. Re-enacted in Chapter 193, Laws of 1933, p. 925, Rem. 1933 Sup., § 7676.

These funds are therefore not subject to appropriation by the legislature for purposes other than those contemplated by the act, nor by methods that run counter to the effective operation of the act.

Chapter 193, Laws of 1933, p. 909, also clearly expresses the intent of the legislature that the accident fund shall be self-supporting. Section 1 of the act contains this language, on p. 925 of the session laws:

"It is the intent that the accident fund created under this section shall ultimately become neither more nor less than self-supporting, exclusive of the expense of administration, . . ." Rem. 1933 Sup., § 7676.

The workmen's compensation act, by its terms, created certain boards and officers who are vested with the authority, and charged with the duty, of administering the act. It also set up a complete method of procedure by which those entitled to the benefits of the act may be assured of, and secure, the same. The procedure so prescribed also provides a complete

method whereby a claimant feeling aggrieved by the decision of the department having supervision over such claims may appeal to the courts.

It cannot be gainsaid that the spirit, purpose and operative method of the workmen's compensation act has now become the established policy of this state. We are fully justified, therefore, in considering that policy in determining the intention of the legislature in passing subsequent legislation which may be thought to affect such policy. *State ex rel. Wolfe v. Parmenter,* 50 Wash. 164, 96 Pac. 1047, 19 L. R. A. (N. S.) 707. Courts will be very reluctant to overturn an antecedent policy by extending the operation of a dubious statute and thereby introducing a flagrant departure from the original aim. 2 Lewis' Sutherland Statutory Construction (2d ed.), §§ 487, 488. As stated in 25 R. C. L., p. 919:

"An act will not be construed to repeal or modify earlier legislation, if, giving such effect to the act, an apparent purpose would appear to disturb an established system of written law, covering a vital field in our system of government. It would be most unreasonable to suppose that a legislative body intended, by doubtful inference, to repeal salutary provisions in a very early statute which, in numerous enactments, it has cautiously preserved."

If the administrative method and the procedure prescribed by the workmen's compensation act be interfered with, the whole purpose of the act may be destroyed. If the legislature may at will appropriate moneys out of those funds regardless of the procedure established by the act, then the act will have lost its effect, and its purpose will be to that extent defeated. The rights of both employer and employee, with reference to the trust funds and their application, will be jeopardized. Those charged with the collection of premiums for the maintenance of the

accident fund will have no way of determining what rates shall be fixed or charged. Those who may be entitled to share in the fund by proper procedural compliance will be placed at a disadvantage if the fund be depleted through outside interference. And finally, the legislature will have supplanted the courts as the final arbiter of the legitimacy of claims.

To give effect to that portion of chapter 190 which appropriates money from the accident fund to the relief of the relator is to repeal by implication the provisions of Rem. Rev. Stat., § 7705, relative to the disbursement of that fund. Such repeals are not favored.

"To work a repeal by implication, the later statute must be irreconcilable with the provisions of the former act. . . . It must also appear that the subsequent statute covers the whole subject-matter of the former one and was intended to take its place . . . All laws upon a given subject should be construed together so as to produce a harmonious system if possible; the presumption being that a new law relating to such subject was enacted with reference to the former laws." *White v. North Yakima,* 87 Wash. 191, 151 Pac. 645.

It certainly cannot be said that, in passing the appropriation act, the legislature intended to repeal the provisions of the workmen's compensation act relative to the disbursement of the trust funds therein set up. All legislation bearing upon that subject has been progressively consistent with the view of upholding and maintaining that act and the administrative method provided therein. That method and that procedure are exclusive, and remain so until lawfully repealed either expressly or by such implication as makes its repeal necessary.

Our attention has been called to the case of *State ex rel. Jones v. Clausen,* 78 Wash. 103, 138 Pac. 653,

which was not cited in either brief. The court therein said, on p. 112:

"Appropriation bills, although temporary in duration, are nevertheless general laws. They are most carefully prepared and maturely considered. If they do not offend against the constitution, and are found to be in irreconcilable conflict with a permanent act, the latter will be held to be suspended or repealed during the time the appropriation bill is in force."

We do not think that the language quoted is controlling here, for two reasons: (1) the fund there involved was not a trust fund, and (2) the appropriation act in that case on its face manifested the design of the legislature to repeal certain provisions of a former act. Both of those elements, we think, are lacking here.

It follows from what we have said that the application for the writ must be, and it therefore is, denied.

BEALS, C. J., TOLMAN, and BLAKE, JJ., concur.

MAIN, J. (dissenting)—I am unable to concur in the majority opinion in this case for these reasons:

(a) The 1933 act is in irreconcilable conflict with the prior acts of the legislature, and for this reason suspends the earlier acts or repeals the same during the time that the appropriation bill is in force, to the extent that the later act is in conflict with the prior ones. This was the distinct holding in *State ex rel. Jones v. Clausen,* 78 Wash. 103, 138 Pac. 653, as shown by the excerpt quoted from that decision in the majority opinion in this case. The wisdom or policy of making a direct appropriation out of the industrial insurance fund by legislative enactment is a matter for the legislature and not for the court. It is, of course, axiomatic that an act of a prior legislature is not binding upon a subsequent one. I see no reason why the legis-

lature in 1933 did not have the power to make the appropriation in question.

(b) Conceding that the industrial insurance fund is a trust fund, the act of 1933 is, nevertheless, valid. So far as it appears in this case, the appropriation made by that act was in the settlement of a claim for injuries. There is no showing that the one for whose benefit the appropriation was made was not injured in the course of his employment while engaged in an extrahazardous occupation. The presumption is in favor of the validity of an act of the legislature and not against it. Indulging the presumption in favor of the legislation, it might well be that the legislature had before it facts which showed that the beneficiary of the appropriation came under the terms of the workmen's compensation act.

For the reasons stated, I dissent.

ON REHEARING.

[*En Banc.* January 29, 1934.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.