[No. 28096. *En Banc.* September 30, 1940.]

MASON-WALSH-ATKINSON-KIER COMPANY, *Respondent,*
v. THE DEPARTMENT OF LABOR AND INDUSTRIES
*et al., Appellants,* JOINT COUNCIL OF
TEAMSTERS, NO. 28, *Intervener.*[1]

[1] Reported in 105 P. (2d) 832.

*The Attorney General* and *Edward S. Franklin,* for appellants.

*Graves, Kizer & Graves,* for respondent.

*Harry Ellsworth Foster,* for intervener.

STEINERT, J.—Plaintiff, appearing in a representative capacity, brought suit against the department of labor and industries and certain of its officers, and against the state treasurer and the state auditor, to recover excess premiums paid by plaintiff and other employers as contributors to the accident fund created by the workmen's compensation act. Joint Council of Teamsters, No. 28, intervened in the action, and by its complaint in intervention sought to prevent the entry of

any decree until plaintiff should make satisfactory guaranty of payment of all claims of injured workmen who might be affected by the action. The cause was tried upon stipulated facts, pursuant to which the trial court entered an interlocutory decree determining the amount of excess payments, directing the state auditor forthwith to draw a warrant against the accident fund in a fixed amount payable to the clerk of the superior court of Spokane county, wherein the action was pending, also directing the state treasurer, immediately upon presentation of the warrant, to pay the amount thereof into the registry of the court, and reserving jurisdiction of the cause for future disposition of the balance of the accident fund found to be standing to the credit of class 7-1, which covers the work of "dam construction." From that portion of the decree directing the issuance and payment of a warrant against and out of the accident fund, defendants have appealed.

The appeal is before us on an agreed statement of facts, prepared and signed by all the parties now concerned, as permitted by Rule X, Rules of the Supreme Court, 193 Wash. 11-a. The substance of the agreed statement is as follows:

Respondent, by its complaint in the superior court, sought recovery of "a large sum of money alleged to have been arbitrarily and capriciously exacted from it," for industrial insurance premiums, by the officials of the department of labor and industries, during the period from July 7, 1934 to March 31, 1938, which sum, though not specifically stated in the complaint, was alleged to be the excess over the proper amount chargeable to and due from respondent. The amount of such excess, as ultimately determined by the trial court, is still "extant" in the accident fund, and "constitutes a trust fund." After voluntary dismissal of certain proceedings, brought in this court, challenging the juris-

diction of the superior court, respondent and appellants entered into a stipulation, upon which the interlocutory decree was subsequently based, in which stipulation the parties agreed that the officers of the department had, by mistake in application of the department's actuarial formulae, exacted from respondent, for industrial insurance premiums, sums aggregating $153,-577.87 over and above the proper charges.

The agreed statement on appeal further recites that, while the stipulation made in the superior court was essentially a confession of judgment, there was nevertheless reserved the question of law as to whether or not a legislative appropriation was necessary for the return of respondent's money.

The original obligation for the payment of the industrial insurance premiums arose out of the construction by respondent of Coulee Dam, which was completed March 31, 1938. Due to the fact that certain claims, arising out of injuries previously sustained by workmen, were still existent, respondent further stipulated and agreed, in the court below, to assume all such obligations by posting proper surety bonds, and to reimburse the department for all amounts due or to become due for medical aid rendered to such injured workmen. The agreed statement concludes with a recitation that the point to be presented and relied upon by appellants on the appeal is this: Is it requisite that there be a legislative appropriation in the sum of $153,577.87, the amount provided for in the decree, before the state auditor may draw a warrant therefor, and before the state treasurer may pay the amount of such warrant?

It is appellants' contention that, in the absence of a legislative appropriation therefor, the issuance and payment of a warrant for excess premiums paid into the accident fund would be violative of Art. VIII, § 4,

of the state constitution, as amended by the eleventh amendment, and of Rem. Rev. Stat., §§ 11002 and 11015 [P. C. §§ 6587 and 6600]. On the other hand, the combined contentions of respondent and intervener, who apparently have joined hands upon the appeal, are (1) that there is, in fact, an ample legislative appropriation, by virtue of the general appropriation act of 1939, chapter 223 of the Session Laws of 1939, pp. 935, 945; (2) that, even if that appropriation be inadequate, no other or further appropriation is needed because the money was unlawfully exacted from respondent and therefore never became a part of the state fund, though actually in the treasurer's hands as custodian; and (3) that the money, to the extent of the amount above indicated, was unlawfully exacted from respondent in violation of the due process and equal protection clauses of the fourteenth amendment to the Federal constitution, and of the due process provision of Art. I, § 3, of the state constitution; and that, since the excess amount is still "extant and identifiable" in the accident fund, it is not controlled by Art. VIII, § 4, and the amendment thereto, or by Rem. Rev. Stat., §§ 11002 and 11015, as contended by appellants.

We shall first set forth the constitutional and statutory provisions upon which appellants rely, and then consider the case from the standpoint of the contentions made by the respondent and the intervener.

■ Article VIII, § 4, of the state constitution, as amended by the eleventh amendment, provides:

"No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within one calendar month after the end of the next ensuing fiscal biennium, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appro-

priated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum."

Rem. Rev. Stat., § 11002, reads:

"The state auditor shall in no case issue any state warrant unless there is a law authorizing the issue of the same, and every warrant shall state the act under which it is drawn; and if any state auditor shall issue any state warrant not authorized by law, he shall forfeit and pay fourfold the amount of such order to the state, to be recovered by action against the auditor and his sureties on his official bond."

Rem. Rev. Stat., § 11015, provides, in part, as follows:

"In all cases of grants, salaries, pay, and expenses ascertained and allowed by law, found due to individuals from the state when audited, the auditor shall draw a warrant upon the treasury for the amount, but in cases of unliquidated accounts and claims the adjustment and payment of which are not provided by law, no warrant shall be drawn by the auditor or paid by the treasurer, unless the previous appropriation shall have been made by law for that purpose, nor shall the whole amount drawn by and paid under any head ever exceed the amount thus appropriated: . . ."

It will be observed that the constitutional provision above quoted has reference to the payment of moneys out of the treasury, while the statutory provisions as quoted have reference to the issuance of warrants. The distinction, however, is of no importance in this case.

The purpose and effect of Art. VIII, § 4, of the constitution are aptly stated in *State ex rel. Peel v. Clausen,* 94 Wash. 166, 162 Pac. 1, as follows:

"The object of the constitution art. 8, § 4, and the statute cited [Rem. Rev. Stat., § 11002], is to prevent expenditures of the public funds at the will of those

who have them in charge, and without legislative direction. . . .

"It is well understood that these provisions—and they are common to most, if not all, of our written constitutions—are mandatory, and that no moneys can be paid out without the sanction of the legislative body."

The first contention, made specifically by the intervener, is that a sufficient appropriation exists by virtue of the general appropriation act of 1939 (chapter 223, Laws of 1939, pp. 935, 945).

That act by its terms appropriates specified amounts out of several funds in the state treasury for salaries of certain officers, for operation of state institutions, departments, and offices, for the purchase and improvement of lands and buildings, for emergencies, for *refunds,* for sundry civil expenses, and for certain other specified purposes. The act contains a specific appropriation, upon which intervener's contention is based, as follows:

"FROM THE ACCIDENT FUND, Claims and Awards and other Expenses provided by law. . . . $8,500,000.00."

It is not contended by the intervener that the claim here involved comes within the general statutory reference to "refunds." Examination of the body of the act reveals that, wherever "refunds" are mentioned, their purpose is specifically designated, and provision is made for their payment out of specific funds. The contention here is, rather, that the $8,500,000.00 appropriation from the accident fund for "claims and awards and other expenses provided by law" is sufficiently broad to cover respondent's claim. We cannot agree with that contention.

While an appropriation need not be in any particular form or words, the legislative intent must be clear and certain; it cannot be inferred by a construc-

tion of doubtful acts or ambiguous language. *State ex rel. Peel v. Clausen*, 94 Wash. 166, 173, 162 Pac. 1, 4; *Crane v. Frohmiller*, 45 Ariz. 490, 45 P. (2d) 955; 59 C. J. 244, § 388; 25 R. C. L. 395, § 29.

The language of the appropriation act certainly does not evince a clear legislative intent to appropriate any part of the $8,500,000 to refunds of excess premiums. The most that intervener can claim is that the language is doubtful and ambiguous with respect to the items intended to be covered by the specific appropriation. That, however, will not permit an inference that the legislature intended thereby to provide for such refunds. On the contrary, when we consider the language of the appropriation act in the light of the subject to which it relates, we are of the opinion that the only permissible inference is diametrically opposite to that contended for by the intervener.

The purpose of the workmen's compensation act, Rem. Rev. Stat., § 7673 [P. C. § 3468] *et seq.*, throughout its history, has been, and is, to provide compensation for workmen injured in extrahazardous occupations, as defined in the act; and the funds created by the act, together with the revenues by which they are sustained, are trust funds devoted to the special purposes designated by the act. *State ex rel. Trenholm v. Yelle*, 174 Wash. 547, 25 P. (2d) 569, 28 P. (2d) 1119.

When the general appropriation act of 1939 is read, as it must be, in the light of the prescribed object of the workmen's compensation act, we are irresistibly impelled to the conclusion that the language of the former act must be interpreted as referring to the payment of "claims and awards and other expenses" arising out of injuries received by workmen who are under the act, and not as including "refunds" to employers for excess premiums paid.

The second contention is that, since the money was unlawfully exacted to the extent of the excess payments, the excess amounts never became a part of the state funds, and hence no appropriation is necessary. That contention is also untenable.

■. Although the accident fund is a trust fund, administered by the state for the benefit of injured workmen, it is in no sense a private fund. *State ex rel. Trenholm v. Yelle,* 174 Wash. 547, 25 P. (2d) 569, 28 P. (2d) 1119; *State v. Vinther,* 176 Wash. 391, 29 P. (2d) 693. Its character as a public fund is indicated by Rem. Rev. Stat. (Sup.), § 7676 [P. C. § 3471] (Laws of 1939, chapter 138, p. 388, § 1), which provides that industrial insurance premiums shall be paid "into the state treasury" for the accident and medical aid funds.

■ Furthermore, it has been settled in this jurisdiction that the industrial insurance accident fund constitutes moneys *in the treasury of the state,* and that no disbursement may be made therefrom without a legislative appropriation. *State ex rel. Shuff v. Clausen,* 131 Wash. 119, 229 Pac. 5. In the case just cited, we said:

"Now, by the plain language of § 7676, above quoted, the funds in question and here sought to be reached are funds payable *into the state treasury,* and therefore these funds are in the state treasury by authority of express legislative enactment. How then is it possible to pay such funds out of the state treasury except in pursuance of a biennial appropriation as prescribed by the constitutional provision above quoted? [Art. VIII, § 4.]"

The court answered the interrogatory which it had propounded by holding that an appropriation was essential. The rule declared in the *Shuff* case was recognized and adopted as authoritative in *State ex rel. Davis v. Clausen,* 160 Wash. 618, 295 Pac. 751.

At the time that the moneys here in question were

paid by respondent, they were considered by all parties concerned as premiums properly determined. There was no intention on the part of either the respondent or the appellants that those funds should not be paid "into the state treasury," as provided by the statute. On the contrary, it was the common intention of the parties that those payments be treated in the same manner as any other payment made under the pertinent statutes. The money in this instance was paid "into the state treasury," and, when so paid, it became a part of the state's funds. Article VIII, § 4, as amended by amendment eleven, is therefore directly applicable, and there is no room for the construction of the constitutional provision in a manner that would make it inapplicable to the present situation.

Some argument is made by the intervener to the effect that the funds in question are held in trust by the state as a mere custodian. Clearly, however, there was neither express nor implied intention on the part of the respondent that the moneys here involved be held in trust for it. As already indicated, the parties for whom the funds, after payment into the state treasury, are held in trust are the workmen who are entitled to the benefits of the workmen's compensation act. Nor is there any question here of fraud upon which the creation of a constructive trust could rest.

Assuming, however, for the sake of argument, that the excess payments do constitute a trust fund for respondent, a legislative appropriation is nevertheless a prerequisite to their repayment.

In *State ex rel. Shuff v. Clausen,* 131 Wash. 119, 229 Pac. 5, a similar argument was advanced by counsel, and was met by this court in the following language:

"It is further argued in behalf of relator that, by reason of the trust nature of the accident fund and the particular purpose for which it is collected from em-

ployers of labor in extra-hazardous occupations, no express biennial legislative appropriation is necessary to authorize the paying from the fund of warrants of this nature, since it would be but paying such warrants from the very funds collected for that sole purpose. Viewed superficially this might seem somewhat persuasive in relators' favor; but it seems to us that an insurmountable obstacle to the paying of such warrants, in the absence of a biennial appropriation rendering the funds available for such purposes, is found in § 4, of Art. 8, . . ."

And in *State ex rel. Davis v. Clausen,* 160 Wash. 618, 295 Pac. 751, the thought was emphasized as follows:

"Moneys, even if not funds of the state in the sense that the same are available for general state purposes, and even though they are derived from some particular source, and are impressed with a trust which requires their use for a special purpose only, are, nevertheless, if required by law to be paid into the state treasury, within the purview of § 4, article 8, of the state constitution, and are not subject to withdrawal without legislative appropriation, and then only in the manner provided by law."

In support of its argument upon this contention, intervener cites *Ajax v. Gregory,* 177 Wash. 465, 32 P. (2d) 560, and *State ex rel. Washington Toll Bridge Authority v. Yelle,* 195 Wash. 636, 82 P. (2d) 120. In those cases, however, the statute creating the administrative bodies there involved, specifically provided that the funds derived by them should not be paid into the state treasury. Those cases are therefore not in point.

The final contention, and the one upon which respondent and the intervener most strongly rely, is that, without regard to the existence of a legislative appropriation, the repayment of the excess premiums is compelled by the fourteenth amendment to the Federal constitution, and by the similar provision found

in Art I, § 3, of the state constitution, which are to the effect that "no person shall be deprived of life, liberty, or property without due process of law."

As already pointed out, however, the moneys, in the instant case, were voluntarily paid into the state treasury by respondent. They, therefore, now constitute funds belonging to the state, not to the respondent. Consequently, respondent is not being deprived of *its* property. At most, it has a claim against the state for the amount of the overpayments resulting from the mutual mistake of fact. The state may be legally, as well as morally, obligated to refund the excess payments. A legislative appropriation, however, is nevertheless necessary.

Courts of other jurisdictions having constitutional provisions practically identical with our own have been confronted with questions very similar to the one with which we are here faced, and they have uniformly reached conclusions in accord with the views herein expressed.

In *Oliver v. Bolinger,* 146 Ark. 242, 225 S. W. 314, recovery was sought of money paid for lands which the state had already conveyed to a prior grantee. It was held that the money, having been paid into the state treasury "through forms of law," could not be withdrawn without a specific appropriation by the legislature.

In *Westinghouse Electric & Mfg. Co. v. Chambers,* 169 Cal. 131, 145 Pac. 1025, an action in mandamus was brought to compel the state controller to issue a warrant on the state treasury for the amount of a judgment against the state for taxes illegally collected. A statute, then in existence, authorized the issuance of such warrants. The court, however, held that the statute was unconstitutional, and that, therefore, the warrant could not be lawfully issued.

In *State ex rel. Blackemore, Woolridge & Co. v. Graham,* 25 La. Ann. 625, it was likewise, and on the same ground, held that a statute which provided for the refunding of certain taxes improperly collected by the state was unconstitutional.

In *Gulf Refining Co. v. McFarland* (on rehearing), 154 La. 251, 97 So. 433, 437, and again in *State v. Liberty Oil Co.,* 154 La. 267, 97 So. 438, it was held by the Louisiana supreme court that an unconstitutional tax, when paid into the state treasury, could not be withdrawn except in pursuance of a specific appropriation.

In a case entitled *In re Pomeroy,* 51 Mont. 119, 151 Pac. 333, it was sought to recover moneys which had come into the hands of the state treasurer through the escheat of an estate. The court held that title to the money was in the petitioning heir, but that recovery could not be had in the absence of a legislative appropriation; and that, in the absence of such an appropriation, a statute authorizing the issuance of warrants for such claims was unconstitutional.

In *McAdoo Petroleum Corp. v. Pankey,* 35 N. M. 246, 294 Pac. 322, excess rentals on an oil and gas lease had been demanded by the commissioner of public lands, and had been paid by the lessee under protest. A writ of mandate was sought to compel the issuance of vouchers for the return of the excess payments. The argument was there made, as it is here, that the money never belonged to the state. It was held, however, in that case, as in the preceding cases, that the money could not be recovered without a specific appropriation as required by the constitution; and that, in the absence of an appropriation, a statute authorizing the issuance of a warrant for the money was unconstitutional.

In view of our conclusion as to the effect of Art. VIII, § 4, of the state constitution as amended by the eleventh amendment, it becomes unnecessary to dis-

cuss Rem. Rev. Stat., §§ 11002 and 11015, upon which appellants place additional reliance.

Those portions of the interlocutory decree appealed from are reversed, and the cause is remanded to the superior court for further proceedings not inconsistent with the views herein expressed.

ALL CONCUR.

[1]Reported in 105 P. (2d) 805.