[No. 22924-9-I.   Division One.   February 20, 1990.]

ROBERT L. HADLEY, *Respondent,* v. THE DEPARTMENT
OF LABOR AND INDUSTRIES, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Thornton Wilson, Assistant,* for appellant.

*Rob Williamson, David W. Ballew,* and *Davies, Roberts & Reid,* for respondent.

Winsor, J.—The Department of Labor and Industries (DLI) appeals a superior court order of summary judgment which reversed a DLI order. We affirm.

Robert Hadley was injured during the course of his employment. Pursuant to RCW 51.24.030, Hadley elected to pursue a third party action against the party who allegedly caused his industrial injury. After trial commenced, the defendant made a $150,000 settlement offer. Although Hadley claimed $900,000 in damages, he accepted the offer. He recognized that there was a significant possibility of a defense verdict or of a very low recovery, due to the composition of the jury, problems of proof, and Hadley's comparative negligence.

Less than a week after entering into the settlement agreement, Hadley informed DLI that he had settled his third party action, and asked DLI to substantially compromise its RCW 51.24.060(2) lien.[1] Hadley supported his request by detailing his liability and comparative negligence problems, as well as the jury composition factor, and by explaining that his attorneys had substantially reduced their fees to facilitate settlement. DLI made a minimal lien compromise, sufficient only to allow Hadley the full benefit of the fee reduction.

Hadley appealed. Alga Gabriel, supervisor of DLI's third party section, testified at the consequent hearing. It is clear from Gabriel's testimony that the primary reason she recommended against more than the minimal compromise was that Hadley's third party action had already settled. Gabriel indicated that she would have recommended a substantially greater compromise if Hadley had made his request before settling.

Gabriel explained that DLI's overriding concern in compromise cases is to protect industrial insurance funds. DLI therefore takes the position that the Legislature empowered it to compromise liens primarily to promote settlement, particularly in cases in which litigation might result in a defense verdict. In that situation, a compromise

---

[1]An injured worker's recovery from a third person is "subject to a lien by the [DLI] and/or self-insurer for its share under [RCW 51.24.060]." RCW 51.24.060(2). DLI has authority to compromise this lien. RCW 51.24.060(3).

assures DLI and the insurance fund of at least some recovery. On the other hand, when settlement has already occurred, ordinarily no insurance funds remain at risk and compromise is inappropriate.[2]

The hearing examiner approved DLI's compromise. After the Board of Industrial Insurance Appeals denied review, Hadley appealed to King County Superior Court. Both parties moved for summary judgment. The trial court granted Hadley's motion and remanded the matter to DLI for reconsideration of Hadley's compromise request.

## STANDARD OF REVIEW

RCW 51.52.140 governs appellate review of superior court judgments entered in DLI cases. It provides that an "[a]ppeal shall lie from the judgment of the superior court as in other civil cases." Since this is an appeal from a superior court summary judgment order, our inquiry is the same as the trial court's. *E.g., Waite v. Whatcom Cy.,* 54 Wn. App. 682, 686, 775 P.2d 967 (1989) (in appeal from order of summary judgment, reviewing court engages in same inquiry as trial court).

■ A trial court's review of DLI decisions is de novo. RCW 51.52.115. The court must confirm a DLI decision if it determines that DLI acted within its power, correctly construed the law, and correctly found the facts. RCW 51.52-.115. In most cases, the court must defer to DLI's findings and decisions as "prima facie correct". RCW 51.52.115. This deference does not, however, extend to pure questions of law, *i.e.,* questions concerning DLI's construction of the law, or the scope of its powers. Thus, we have said:

> We agree with the facts, but disagree with the board's legal interpretation of the agreement. . . . [T]he presumption that

---

[2]DLI's written policy manual states:

"The purpose of [RCW 52.24.060(3)] is to encourage out–of–court settlement where likelihood of recovery is slim. When a request to compromise our lien is preceded by a settlement acceptance or a judgment has been rendered, no 'promotion' of the case is warranted. In these instances, the request to compromise the lien is declined."

the board's findings and decision are prima facie correct does not apply.

*N.A. Degerstrom, Inc. v. Department of Labor & Indus.*, 25 Wn. App. 97, 102, 604 P.2d 1337, *rev'd on other grounds sub nom. Westinghouse Elec. Corp. v. Department of Labor & Indus.*, 94 Wn.2d 875, 621 P.2d 147 (1980); *accord, Jepson v. Department of Labor & Indus.*, 89 Wn.2d 394, 400, 573 P.2d 10 (1977) (DLI's interpretation of the Industrial Insurance Act is not binding on the courts or Legislature); *see also* 101 C.J.S. *Workmen's Compensation* § 807, at 84 (1958) (determinations of compensation authorities and lower court are not binding on questions of law).

The compromise provision at issue here, RCW 5.24.-060(3), affords DLI "sole discretion to compromise the amount of its lien." Consequently, absent a showing of manifest unreasonableness, courts must affirm DLI's lien compromise decisions so long as DLI properly interpreted and applied applicable law. *Wilson v. Board of Governors,* 90 Wn.2d 649, 656, 585 P.2d 136 (1978), *cert. denied,* 440 U.S. 960, 59 L. Ed. 2d 774, 99 S. Ct. 1503 (1979).

### Effect of Existing Settlement on Compromise

The question presented is whether DLI correctly interpreted RCW 51.24.060(3) as allowing it to use the fact that a case has already settled as a significant factor against compromise. This being a pure question of law, it is fully reviewable.

DLI argues that its reliance on the fact of settlement as a basis for refusing to compromise is justifiable because: (1) it protects industrial insurance funds from unjustified expenditures; (2) it is consistent with legislative intent that RCW 51.24.060(3) enable settlement to occur; and (3) to do otherwise would constitute an unconstitutional gift of state funds. None of these arguments is persuasive, and the first two ignore the plain language of the statute.

When it enacted RCW 51.24.060(3), the Legislature could reasonably have written the provision to require DLI

to make compromise decisions based solely on a protect–the–insurance–fund analysis. Had the Legislature done so, DLI would be justified in compromising only in cases where insurance funds are at risk. However, the Legislature did not do so. Instead, RCW 51.24.060(3) provides:

> The department . . . has sole discretion to compromise the amount of its lien. In deciding whether or to what extent to compromise its lien, the department . . . shall consider at least the following:
> (a) The likelihood of collection of the award or settlement as may be affected by insurance coverage, solvency, or other factors relating to the third person;
> (b) Factual and legal issues of liability as between the injured worker or beneficiary and the third person. Such issues include but are not limited to possible contributory negligence and novel theories of liability; and
> (c) Problems of proof faced in obtaining the award or settlement.

For purposes of our analysis, subsection (c) is critical. Its plain language requires DLI to consider problems the claimant "faced" in obtaining an "award or settlement." From this language, we can only conclude that the Legislature intended for DLI to make compromise decisions based not only on the potential risk to the fund, but also on the problems the claimant who settled would have faced had he or she gone to trial; or on the problems actually faced at trial by one whose third party claim terminated in an award and final judgment. Thus, in the case of an award and judgment, for example, if there is persuasive evidence that the claimant's problems of proof [3] likely reduced the damage award, DLI must consider that fact in deciding upon compromise. To do otherwise would effectively eliminate subsection (c).[4]

---

[3] These proof problems could include problems in proving lack of contributory negligence. *See* RCW 51.24.060(3)(b).

[4] Because we rely on the plain and unambiguous language of RCW 51.24-.060(3), we do not address the parties' legislative history arguments. *See, e.g., In re Estate of Foster*, 55 Wn. App. 545, 551–52, 779 P.2d 272 (1989) (resort to legislative history unnecessary when statute is unambiguous).

DLI's interest in protecting insurance funds is not unreasonable. However, this interest cannot be allowed to override other, equally legitimate, considerations. Our Legislature has historically demonstrated concern for the plight of injured workers. This concern led to the original enactment of the Industrial Insurance Act and, presumably, to its subsequent amendment allowing DLI to compromise its liens and to consider problems of contributory negligence and other practical factors in so doing. *See generally Stertz v. Industrial Ins. Comm'n,* 91 Wash. 588, 590–91, 158 P. 256 (1916) (discussing purpose and scope of industrial insurance statutes); C. Bush, *The Impact of the Tort Reform Act Upon the Industrial Insurance Act,* 22 Gonz. L. Rev. 121 (1986).

We hold that DLI's policy regarding compromise in already settled cases is based on an incorrect interpretation of law, and is error.

■ Alternatively, DLI contends that the State Constitution prohibits it from compromising its lien in a case where settlement has already occurred. DLI argues that compromising in this situation would effect an unconstitutional gift of state funds. Const. art. 8, § 5.[5] DLI's argument fails because it erroneously assumes that industrial insurance funds are state funds governed by the constitutional provision.

Industrial insurance funds are funds collected from workers and employers, and held in trust for their benefit by the State. *State ex rel. Trenholm v. Yelle,* 174 Wash. 547, 550, 25 P.2d 569 (1933); *see* RCW 51.08.175. The funds are not subject to appropriation by the Legislature for any purpose other than those contemplated by the Industrial Insurance Act. *Yelle,* 174 Wash. at 550. Industrial insurance funds are, therefore, not general state funds, and are outside the purview of Const. art. 8, § 5. *See Keeting v. PUD*

---

[5]Const. art. 8, § 5 provides:

"The credit of the state shall not, in any manner be given or loaned to, or in aid of, any individual, association, company or corporation."

*1,* 49 Wn.2d 761, 765, 306 P.2d 762 (1957) (municipal or PUD funds raised by taxation or revenue are not state funds but are funds belonging to the entity created by the Legislature); *cf. Adams v. UW,* 106 Wn.2d 312, 327, 722 P.2d 74 (1986) (unconstitutional gift of state funds decreases *State's general fund*); AGLO 19 (1981) (absent clerical error, misrepresentation or fraud, DLI is not entitled to recover benefits paid before entry of order rejecting injured party's claim). DLI's constitutional argument is without merit.

For the reasons set out above, we hold as a matter of law that DLI's policy against compromising in cases where settlement has already occurred is not permitted by RCW 51.24.060(3). We therefore agree with the trial court that this matter must be remanded for reconsideration of Hadley's compromise request. In so holding, however, we emphasize that so long as DLI disregards the fact that a settlement has already been made, and does not otherwise misinterpret applicable law, it has "sole discretion," whether and to what extent it will compromise its lien.

The judgment is affirmed.

COLEMAN, C.J., and RINGOLD, J. Pro Tem., concur.

Reconsideration denied May 15, 1990.

Review granted at 115 Wn.2d 1007 (1990).