David Threedy, Executive Secretary Board of Industrial Insurance Appeals P. O. Box 42401 Olympia, Washington 98504-2401
Dear Mr. Threedy:
By letter previously acknowledged, you have requested an opinion from this office on the following questions, which we have slightly paraphrased for clarity:
1. May the Board of Industrial Insurance Appeals use money in the accident fund and/or the medical aid fund to process and adjudicate appeals arising under Laws of 1996, ch. 226 and Laws of 2003, ch. 402?
2. To what extent may the Board of Industrial Insurance Appeals continue receiving, processing, and adjudicating appeals arising under Laws of 1996, ch. 226 or Laws of 2003, ch. 402 in the absence of sufficient funds to pay the cost of such processing?
 BRIEF ANSWERS
The Board has statutory authority to pay for administering appeals from death benefit eligibility orders of the department of labor and industries (Department)-under Laws of 1996, ch. 226 and Laws of 2003, ch. 402-from the accident fund and the medical aid fund. The Legislature could (if it so chose) appropriate funds from some other source to pay the expenses associated with these appeals.
 [original page 2] ANALYSIS
Taken together, Laws of 2003, ch. 402 and Laws of 1996, ch. 226 create (1) a death benefit for participants in state public employee retirement systems who die as the result of injuries sustained in the course of employment, and (2) the same benefit for employees of any state agency, the common schools, or institution of higher education "not otherwise provided a death benefit through coverage under their enrolled retirement system under this act." Laws of 2003, ch. 402, § 4.[1]
Under these laws, the Department is required to determine eligibility for the benefit "consistent with Title 51 RCW." RCW Title 51 is the Industrial Insurance Act. With respect to public employees enrolled in a state retirement system, the Department is to notify the Department of Retirement Systems of the eligibility determination by order under RCW51.52.050, and it is to notify the Department of General Administration in the same way with respect to a public employee not enrolled in a retirement system. Laws of 1996, ch. 226, §§ 1, 2; Laws of 2003, ch. 402, §§ 1-4.
In that your questions relate to the role of the Board in hearing appeals from these orders, we examine the law governing the Board's responsibilities. The Board is created by RCW 51.52.010. Its original and principal function is to hear appeals from decisions of the Department arising out of RCW Title 51, which establishes the industrial insurance system. RCW 51.52.050 provides that whenever the Department "has taken any action or made any decision relating to any phase of the administration of [Title 51 RCW] the worker, beneficiary, employer, or other person aggrieved thereby may request reconsideration of the department, or may appeal to the board." Because Laws of 2003, ch. 402 and Laws of 1996, ch. 226 direct the Department to determine eligibility for these death benefits "consistent with title 51 RCW", the Board would hear such appeals.
Your question then is whether the Board is authorized to recover the expense of administering such appeals from the accident fund and the medical aid fund. These funds are the ordinary source of payment for Board expenses. In this regard, RCW 51.52.030 provides that it "may incur such expenses as are reasonably necessary to carry out its duties hereunder, which expenses shall be paid, one-half from the accident fund and one-half from the medical aid fund upon vouchers approved by the board."
[original page 3] 1. May the Board of Industrial Insurance Appeals use money in the accident fund and/or the medical aid fund to process and adjudicate appeals arising under Laws of 1996, ch. 226 and Laws of 2003, ch. 402?
Your first question concerns whether the Board may use its ordinary funding sources (the accident fund and the medical aid fund) to pay the expenses associated with hearing appeals not arising directly out of the operation of RCW Title 51, but arising from death benefit determinations by the Department under Laws of 1996, ch. 226 and Laws of 2003, ch. 402.
Your inquiry refers to an earlier opinion on a related subject, AGLO 1980 No. 15 (copy attached).[2] In that opinion, this office considered the authority of the Board to use accident fund or medical aid fund monies to process and adjudicate appeals under the Crime Victims' Compensation Act. The opinion concluded that the accident fund and the medical aid fund were not available for this purpose and that the Board could not process crime victims' compensation appeals unless the Legislature provided funds for that purpose.[3] The conclusion in AGLO 1980 No. 15 was based, in large part, on two provisions of the crime victims' compensation act. The first, RCW 7.68.090, provided that, "[t]he director shall establish such fund or funds separate from existing funds, necessary to administer this chapter, and payment to these funds shall be from legislative appropriation, statutory provision, reimbursement and subrogation as provided in this chapter, and from any contributions or grants specifically so directed." The second, RCW 7.68.150, provided that "all benefits and payments made, and all administrative costs accrued, pursuant to this chapter shall be funded and accounted for separate from the other operations and responsibilities of the department".[4]
The statutes which are the subject of the present opinion request are quite different from the crime victims' compensation act discussed in AGLO 1980 No. 15. Most notably, with respect to the Crime Victims' Compensation Act, the Legislature adopted a clear policy of fiscally separating the crime victims' compensation program from other programs operated by the Department through the above-quoted provisions, requiring separate funding and accounting for the crime victims program. By contrast, neither of the employment death benefit acts which are the subject of your question contains any language requiring separate funding or accounting for activities connected with administering those laws. To the contrary, each calls for the death benefit determinations to be made by the Department "consistent with Title 51", and Title 51 includes RCW51.52.030, authorizing the Board to fund its duties from the accident and medical aid funds.
[original page 4] AGLO 1980 No. 15 also noted the case of Trenholm v. Yelle, 174 Wash. 547, 25 P.2d 569 (1933), where the state Supreme Court held (based on then governing statutes) that an appropriation from the accident fund for a claim that did not expressly arise under the worker compensation statutes could not be paid from that fund. In reaching this conclusion, the court noted that by law, the fund was comprised of monies paid by employers and devoted to payment of claims by workers injured in the course of employment. In this respect, the court quoted a then-existing statute, which provided that "[t]he fund thereby created shall be termed the `accident fund' which shall be devoted to the purpose specified for it in this act." Trenholm, 174 Wash. at 550, citing Rem. Rev. Stat., § 7676.[5] The court determined that "[b]y the act itself the fund is impressed with a trust." Id. The current statutes relating to the two funds about which you inquire contain no language explicitly devoting them to a specific purpose. See RCW 51.44.010, .020. Moreover, unlike the case in Trenholm, here, by substantive law, the Legislature has directed how the death benefits at issue are to be adjudicated. By virtue of the system it has chosen (requiring determination by order of the Department "consistent with Title 51.52
RCW"), the Legislature has authorized appeal to the Board and payment for such adjudications from these funds.
We note, however, that the Legislature is free to fund the expense of adjudicating appeals arising under the 1996 or 2003 public employee death benefit acts from a different source. Funding these appeals from other sources and leaving the accident fund and the medical aid fund to cover only the costs associated with traditional "core" workers compensation claims is a policy choice for the Legislature. This opinion merely concludes that the current law reflects a legislative policy choice to fund this expense from the accident and medical aid funds.
2. To what extent may the Board of Industrial Insurance Appeals continue receiving, processing, and adjudicating appeals arising under Laws of 1996, ch. 226 or Laws of 2003, ch. 402 in the absence of sufficient funds to pay the cost of such processing?
Your second question appears to be based largely on the assumption that Question 1 would be answered in the negative and that the Board could process appeals arising under the special death benefit statutes only with funds appropriated by the Legislature, or otherwise provided, for that specific purpose. However, in light of our conclusion that the accident fund and the medical aid fund may lawfully be used to cover the expenses of these adjudications, the Board would only lack sufficient funds to process adjudications when the accident fund and the medical aid fund were themselves insufficient to cover the Board's expenses. In light of the fact that the two funds are also used to pay the great majority of the workers compensation claims [original page 5] arising under Title 51, we will not indulge in speculation here as to the consequences that would follow if the funds were so depleted.
We trust the foregoing will prove useful to you.
Sincerely,
JAMES K. PHARRIS Senior Assistant Attorney General
[1] In 1996, the Legislature authorized the payment of a death benefit award for certain law enforcement officers, fire fighters, and commissioned employees of the Washington State Patrol. Laws of 1996, ch. 226, § 1 (RCW 41.26.048); § 2 (RCW 43.43.285). Similar awards were authorized for other categories of public employees by the 2003 session of the Legislature. Laws of 2003, ch. 402, § 1 (RCW 41.40.0932) (members of the public employees' retirement system); § 2 (RCW 41.32.053) (members of the teachers' retirement system); § 3 (RCW 41.35.115) (members of the school employees' retirement system); § 4 (RCW 41.04.017) (state employees, public school employees, and public higher education employees not covered by any of the previous sections).
[2] Attorney General Letter Opinions (AGLOs) were used for several years to describe a type of opinion which was considered official by the Attorney General but was not published as a formal opinion (AGO). AGLOs are no longer used by this office but are still considered to have official status.
[3] The Board also hears appeals on crime victim compensation claims by virtue of RCW 7.68.110.
[4] RCW 7.68.090 read in 1980 as it does now. RCW 7.68.090 was amended in 1995 (Laws of 1995, ch. 234, § 3). It is quoted as it read in 1980.
[5] In this respect, we note that while it is not part of the Industrial Insurance Act, the provision of death benefits to survivors of public employees who die from work-related injuries nonetheless is consistent with the Act's general purpose. The 1996 and 2003 Acts which prompted your request relate to the subject of compensating workers (and their dependents) for deaths that arise out of workplace injuries.